Roberto SOTO–BELTRAN, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 12 Civ. 3798 (VM).

United States District Court,
S.D. New York.

May 7, 2013.

Roberto Soto–Beltran, Washington, MS, pro se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Petitioner Roberto Soto–Beltran ("Soto–Beltran"), acting pro se, filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "§ 2255 Petition"). Soto–Beltran is currently serving a sentence of 120 months after pleading guilty to one count of conspiracy to import heroin and cocaine into the United States, in violation of 21 U.S.C. § 963, and

one count of conspiracy to distribute and to possess with the intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846, He offers two grounds for his petition: ineffective assistance of counsel, and violation of his due process rights. According to Soto–Beltran, three events transpired between his criminal conduct and the imposition of his sentence that improperly influenced its length. First, the government denied him the opportunity to become a cooperator, while enlisting several of his co-defendants. Second, the government declined to make a U.S.S.G. § 5K1.1 ("§ 5K1.1") motion on his behalf, as it did for his cooperating co-defendants. Third, the Court determined a term of incarceration by evaluating his individual culpability under 18 U.S.C. § 3553(a) ("§ 3553(a)"). On Soto–Beltran's direct appeal, the Court of Appeals for the Second Circuit reviewed and rejected the first and third of these as grounds for appellate relief. *See United States v. Soto–Beltran,* 421 Fed.Appx. 7 (2d Cir.2011). Soto–Beltran's § 2255 Petition now primarily assails the second contention on due process grounds, albeit through the lens of numerous allegations he styles as ineffective assistance of counsel claims. For the reasons stated below, the Court **DENIES** Soto–Beltran's motion.

## I. *FACTUAL BACKGROUND AND PROCEDURAL POSTURE*

### A. *OFFENSE CONDUCT, CONVICTION, AND SENTENCING*

Soto–Beltran and his wife, Viviana Gil ("Gil"), were among fourteen co-defendants indicted on two Controlled Substances Act counts after an investigation by the Drug Enforcement Administration revealed their participation in an international drug trafficking conspiracy. Soto–Beltran and Gil, along with another co-conspirator, were arrested on June 21, 2006; the three "New York Operatives" had coordinated and received shipments of heroin and cocaine from Colombia to the United States. At their presentation for arraignment, each consented to temporary orders of detention without prejudice to subsequently seeking release on bail. *See* Arraignment Tr., June 21, 2006, at 6:18–8:9. Gil later proposed a bail package and obtained pretrial release over the Government's appeal.

Although Gil and Soto–Beltran entered their guilty pleas consecutively, the Government treated Gil as a cooperator and subsequently issued her a § 5K1.1 letter that resulted in a sentence of nine months of incarceration, a term that was below the sentencing guidelines. At some point prior to Soto–Beltran's guilty plea, his attorney Thomas Dunn ("Dunn") arranged proffer sessions in hopes of procuring a cooperation agreement that could later qualify his client for a sentence reduction, *see* Dunn Aff. ¶ 4, but Soto–Beltran was not treated as a cooperator and did not receive a § 5K1.1 letter.

Soon after his plea, Soto–Beltran first indicated misgivings regarding his plea negotiations. The Court received an ex parte pro se letter stating that "something ha[d] gone terribly wrong" in his case, upon receipt of which the Court conducted a hearing. Observing that Soto–Beltran's letter "indicate[d] that the attorney-client relationship ha[d] broken down in this case," Substitution Hr'g. Tr., Nov. 20, 2009, at 2:8–9, the Court indulged his request to substitute counsel, appointing CJA attorney-Gerald DiChiara ("DiChiara") by order of November 23, 2009.

Soto–Beltran's sentencing hearing took place on March 5, 2010. DiChiara objected to a factual finding made in the Presentence Investigation Report ("PSR") that would have been adverse to Soto–Beltran's eligibility for "safety valve" exemption

from the applicable statutory minimum under 18 U.S.C. § 3553(f) ("§ 3553(f)") and argued, both orally and in written submissions, that Soto–Beltran deserved lenience. He emphasized that Soto–Beltran's offense conduct had been no more culpable than Gil's and asserted that a shorter term was appropriate to reflect Soto–Beltran's proffers and willingness to cooperate, his participation in Gil's decisions to cooperate and to plead guilty, his evident contrition, his strong prospects for rehabilitation, his avowal that he had been adequately deterred from committing future crimes, as well as to avoid unwarranted disparity with the low sentence Gil had received.

At sentencing, the Court adopted the factual findings made in the PSR save for DiChiara's objection, *see* Sentencing Tr., Mar. 5, 2010, at 14:20–22, and imposed a below-guidelines sentence of 120 months after considering the individual factors listed in § 3553(a), particularly contemplating the need to avoid an arbitrary result in light of the sentences it had already handed down to twelve of the fourteen co-defendants.[1] The Court found that the Government's decision to provide a § 5K1.1 letter for Gil but not Soto–Beltran had left him most similarly situated with other non-cooperating co-defendants, observing that it could not "sentence Mr. Soto in a vacuum in a case where his conduct is comparable to that of other co-defendants who have already been sentenced and whose criminal history category and other circumstances are also quite comparable." Sentencing Tr., Mar. 5, 2010, at 16:25–17:6. Reflecting upon the sentences already imposed upon the only three of Soto–Beltran's co-conspirators who had pleaded guilty to a count of the

original indictment, the Court concluded that it had "not seen anything in Mr. Soto's circumstances that would warrant a much greater departure from the guidelines in this case." *Id.*

## B. *APPEAL*

Soto–Beltran appealed his sentence on two grounds. First, he challenged its reasonableness, complaining that it was tenfold longer than the term of his wife's incarceration despite their indistinguishable offense conduct. The Court of Appeals, however, could "identify no lack of procedural or substantive reasonableness in the challenged sentence," and affirmed by summary order. *Soto–Beltran,* 421 Fed.Appx. at 8. The Court of Appeals declined to "second guess [this Court's] assessment of the relevant facts," including which of the various co-conspirators were similarly situated on the basis of the § 3553(a) factors. *Id.* at 8 (*citing United States v. Cavera,* 550 F.3d 180, 187–89 (2d Cir.2008) (en banc)).

Second, Soto–Beltran argued that the Government's decision to deny him a § 5K1.1 letter constituted disparate treatment on the basis of gender. As this determination, according to Soto–Beltran, betrayed an "improper prosecutorial motive" in violation of his right to equal protection of the laws, any resultant sentencing disparity was illegal. *Id.* The Court of Appeals also declined to presume that the Government's exercise of its own discretion had been improperly motivated, stating, "Gil was chosen *as a cooperator* not because of her gender, but because she was granted bail pending trial, putting her in a position to cooperate actively with

1. Soto–Beltran's PSR, like Gil's, recommended a Guidelines range of 135–168 months. Although his PSR had been prepared in September of 2009 and documented only the sentences of six co-defendants, PSR, Sept. 22, 2009, at ¶¶ 8–19, the Court specifically considered the additional sentences that had been handed down in the interim in rendering Soto–Beltran's sentence.

investigators. Not only did the government have no role in Gil's being admitted to bail; it actively opposed her release." *Id.* (applying *Wade v. United States*, 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992)) (emphasis added). This Court entered final judgment pursuant to the Court of Appeals' mandate on May 9, 2011.

## II. DISCUSSION

Soto–Beltran's Memorandum of Law in support of his § 2255 Petition purports to state eleven distinct ineffective assistance of counsel claims, and his reply adds another. Further, Soto–Beltran's § 2255 Petition alleges a nominally separate but interrelated due process claim: the sentence imposed, he argues, did not accurately reflect the severity of his offense, conduct, and role within the conspiracy in respects that were not presented on his direct appeal.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Although Soto–Beltran's counsel was substituted shortly before his sentencing, the phase at which the alleged consequent prejudice materialized, Soto–Beltran's claims are addressed specifically to Dunn, who represented him initially through this Court's acceptance of Soto–Beltran's guilty plea. As the Court is obliged to construe the pleadings of a pro se petitioner liberally in his favor, DiChiara's performance will nonetheless be considered where the instant claims necessarily implicate it.[2] *See, e.g., Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir.1983) (where a petitioner is proceeding pro se and "lack[s] expertise," the Court "should review [his] habeas petition[ ] with a lenient eye"); *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001)

("We see no reason why the general rule [affording liberal construction of pro se pleadings] should not apply to pro se motions filed pursuant to section 2255."); *accord Rosa v. United States*, 170 F.Supp.2d 388, 399 (S.D.N.Y.2001).

### 1. Legal Standard

 To provide constitutionally effective assistance, counsel must "ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When an ineffective assistance claim attacks the length of a sentence rather than the fact that it was imposed, the familiar test established in *Strickland* effectively acquires a third prong: petitioner must show (1) that counsel's performance was the proximate cause of some increment of the sentence, (2) that the implicated performance "fell below an objective standard of reasonableness," and (3) that there is "a reasonable probability" that the sentencing outcome would have been different but for counsel's ineffective performance. *Arakelian v. United States*, No. 08 Civ. 3224, 2009 WL 211486, at *5 (S.D.N.Y. Jan. 28, 2009). The rationale is that a sentence is legitimate only to the extent that it reflects guilt and culpability as developed through reliable litigation of the underlying facts. *Cf. Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

 The prejudice inquiry, "unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight." *Morgan v. United States*, No. 06 Civ. 1247, 2009 WL 1172849, at *5 (E.D.N.Y. May 1, 2009)

---

**2.** "[A] single prosecution can give rise to ineffective assistance claims arising at every stage of the case, based on different events, and

involving different counsel." *Yick Man Mui v. United States*, 614 F.3d 50, 56 (2d Cir. 2010).

(*citing Lockhart v. Fretwell*, 506 U.S. 364, 371–73, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)) (emphasis added).[3] Although "[t]he standard is less than a preponderance of the evidence," *Arnold v. Thaler*, 484 Fed.Appx. 978, 982 (5th Cir.2012), "some objective evidence other than defendant's assertions [is required] to establish prejudice," *Pham v. United States*, 317 F.3d 178, 182 (2003). A "significant disparity" between the petitioner's actual sentence and that imposed on a similarly situated co-defendant is sufficient to corroborate plausibly-alleged prejudice in a Strickland sentencing claim. *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011).

### 2. *Application*

Soto–Beltran advances twelve grounds for his ineffective assistance of counsel claim. Specifically, he claims that his attorney; 1) abandoned his client; and that he failed 2) to investigate possible plea bargains or mitigating factors; 3) to request bail; 4) to provide him with discovery material; 5) to submit motions to suppress evidence; 6) to "seal the deal" in securing a § 5K1.1 letter; 7) to demonstrate that Soto–Beltran was "less culpable than the average participant" in this case; 8) to introduce "cruel and unusual punishment" factors to mitigate the sentence; 9) to achieve proportionality in sentencing; 10) to show the Court the degree of Soto–Beltran's culpability; 11) to object to a mandatory minimum; and 12) to properly advise Soto–Beltran about the consequences of pleading guilty.[4] Further, he connects these alleged failures with two specific types of prejudice: 1) certain factual aspects of his offense, conduct, and culpability were not reliably adjudicated with the effective assistance of counsel; and 2) his inability to receive a § 5K1.1 letter and the attendant unavailability of a sentencing reduction for substantial assistance he might have provided.[5]

■■■ None of Soto–Beltran's twelve allegations support a claim for ineffective assistance of counsel. Indeed, three of Soto–Beltran's claims can be dismissed summarily: First, his allegations of "abandonment" (No. 1) do not amount to a cognizable claim, as counsel's duty is to provide effective legal assistance, not companionship and Soto–Beltran presents no compelling demonstration that his attorney failed to appear at any scheduled court proceedings or to respond to any submission or request. Second, no mandatory minimum sentence (No. 11) was at issue in this case because Soto–Beltran qualified for the "safety valve" provision

---

**3.** To successfully attack a sentence imposed upon conviction by plea, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, —— U.S. ——, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012) (*citing Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001)). "[P]rejudice can be shown if loss of [a] plea opportunity led to a trial resulting in a conviction on more serious charges *or* the imposition of a more severe sentence." *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 1387, 182 L.Ed.2d 398 (2012) (emphasis added).

**4.** All subsequent numeric labels of Soto–Beltran's ineffective assistance claims will relate to their position in this list.

**5.** The Court has determined that the grounds for his ineffective assistance and due process claims substantially overlap, but that due process is the more appropriate vehicle for addressing their common substance. The discussion that follows will therefore first address the claims pertaining primarily to alleged violations of Soto–Beltran's *substantive* right to counsel, reserving embedded and interrelated due process and jury trial issues for separate subsequent treatment.

under § 3553. Therefore, Soto–Beltran's counsel could not possibly have failed to object to the imposition of a mandatory minimum. Third, Soto–Beltran is procedurally barred from raising issues relating to his pretrial detention (No. 3) where they were previously raised in his sentencing submissions and incorporated within the Court's original decision to render a below-guidelines sentence, which was expressly based in part on such features of "the defendant's lengthy pre-trial incarceration." *See* DiChiara Sentencing Mem., Mar. 2, 2010, at 5–6; *Sen. Tr.* at 10:9–13; *see also* Judgment, Mar. 5, 2010, at 3. Since the Court's original application of § 3553(a) fully and properly considered the totality of these facts, *Soto–Beltran*, 421 Fed.Appx. at 8, additional relief on this basis is now precluded.[6]

■ A number of Soto–Beltran's claims hypothesize that, but for his counsel's ineffective assistance, he would have been able to demonstrate to the Court a lesser degree of culpability, and thus would have received a reduced sentence. (*See* Nos. 1, 3, 4, 7, 8, 9, and 10.) But the Court cannot identify any occasion prior to Soto–Beltran's guilty plea at which reasonably effective counsel should have addressed these facts, which he now alleges were

relevant to his sentencing. This finding preempts any further critique of Dunn's assistance in connection with the factual basis establishing Soto–Beltran's culpability. Moreover, there is no objective evidence of any probability that more effective litigation of culpability would have benefitted him. Soto–Beltran's PSR superseded Dunn's preconviction efforts to investigate as a proximate source of the factual record at sentencing. *See* Sentencing Tr., Mar. 5, 2010, at 14:20–22. Specifically, it found that Soto–Beltran, Gil, and the three other co-conspirators with whom the Court at sentencing found Soto–Beltran to be similarly situated, were "not afforded any mitigating or aggravating role enhancements."[7] PSR, Sept. 22, 2009, at ¶ 70.

■ Likewise, Soto–Beltran's claims alleging ineffective assistance during plea negotiations (Nos. 6 and 12) fail to meet the high bar set in *Strickland*. According to Soto–Beltran, Dunn recommended that he plead guilty without a plea offer. Dunn's negotiation efforts were simply too attenuated from any prejudice that arose during the sentencing phase. The Government has absolute discretion as to whom it chooses to enlist as a cooperator. Relatedly (but distinctly), the prosecution alone

6. *See Yick Man Mui*, 614 F.3d at 53–54 ("[M]andate rule [bars] ineffective assistance claims in a Section 2255 proceeding when the factual predicates of those claims" are "impliedly rejected by the appellate court mandate.").

7. Even liberally reading Soto–Beltran's petition to include DiChiara in his role as sentencing counsel does not change the result. Strategic considerations amply support the manner in which DiChiara litigated the full spectrum of facts supporting the Court's application of § 3553(a) in this case: Soto–Beltran's allocution to the factual basis of his offenses narrowed the range of "plausible options" for sentencing counsel. DiChiara could not reasonably have denied facts that

had already been admitted by his client absent any indication of their potential falsity, which Soto–Beltran nowhere alleges. Disavowing his culpability at the sentencing stage would have undermined Soto–Beltran's credibility and, more importantly, the Court's ability to find that Soto–Beltran had accepted responsibility for his crimes, thereby jeopardizing his "safety valve" eligibility under § 3553(f). DiChiara also addressed the issue of how recruitment into the conspiracy bore on the conspirators' culpability generally, arguing (unsuccessfully) in his written sentencing submission that this consideration was immaterial because Soto–Beltran had also been "recruited" into the conspiracy.

has the prerogative to withhold a § 5K1.1 letter at a defendant's sentencing. Moreover, the factual record at sentencing comprised the PSR and the Government's decision not to offer Soto–Beltran a § 5K1.1 letter, neither of which are products of counsel's pre-conviction performance in this case. *See Parker v. Ercole,* 666 F.3d 830, 834 (2d Cir.2012) (ineffective assistance claim may be dispensed with if it fails on either prong).

## B. *DUE PROCESS CLAIMS*

Soto–Beltran also raises three "due process" claims. He contends that 1) his sentence was excessive when compared to those of his co-defendants, given his minor culpability; 2) the Court erred in "determining that the mandatory minimum was the required sentence when the defendant qualified for safety valve but his Guidelines range exceeded the mandatory minimum," Def's Mem. of Law, May 10, 2012, at 11; and 3) the Court erred in failing to consider at sentencing Soto–Beltran's "alien status" or the "harsh conditions of confinement when at MDC Brooklyn," *id.* at 14. For the below reasons, the Court finds that Soto–Beltran's due process claims are procedurally barred and, therefore, fail.

### 1. *Legal Standard*

■ Section 2255 confers a right upon federal prisoners to test the legality of their sentences. A petitioner may obtain relief under § 2255 if punishment was imposed by a court lacking jurisdiction, is in violation of the United States Constitution or United States law, was excessive under applicable law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Under the "catch-all" ground, "a criminal defendant must demonstrate an error of law or fact that constitutes a fundamental defect" in the proceedings and adversely affects his substantial rights, thus produc-

ing a "miscarriage of justice." *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir. 1995).

■ "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Sanin,* 252 F.3d 79, 83 (2d Cir.2001) (*quoting Cabrera v. United States,* 972 F.2d 23, 25 (2d Cir.1992)); *see also Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993) ("[A]ny claim raised by [petitioner] ... that was also raised ... on direct appeal of his conviction is precluded from consideration by this Court."). This so-called "mandate rule bars re-litigation of issues already decided on direct appeal," as well as "issues impliedly resolved by the appellate court's mandate." *Yick Man Mui,* 614 F.3d at 53. "To determine whether an issue may be considered on remand, a district court should look to both the specific dictates of the [appellate] order as well as the broader spirit of the mandate." *Id.* (internal quotation marks omitted). In addition, claims not raised on direct appeal may not be raised on collateral review absent a showing of cause and prejudice. *Id.* at 54; *see also Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

### 2. *Application*

■ Soto–Beltran's first claim was explicitly decided by the Second Circuit on direct appeal and is therefore procedurally barred from collateral review. *See Soto–Beltran,* 421 Fed.Appx. at 8 ("Soto–Beltran further contends that his sentence is excessive relative to other co-defendants who received similar sentences despite playing more significant roles than he had in the charged conspiracy. We are not persuaded."). Soto–Beltran's second and third claims could have been raised on direct appeal, but were not. Given that

Soto–Beltran has failed to offer any evidence of cause or prejudice, the Court finds that his second and third claims may not be raised for the first time on collateral review.[8]

### III. *ORDER*

Accordingly, it is hereby

**ORDERED** that Roberto Soto–Beltran's Motion to Vacate, Set Aside or Correct Sentence (Dkt. No. 2) is hereby **DENIED.**

**SO ORDERED.**

---

8. Even if Soto–Beltran's second and third claims were not procedurally barred, the Court would nonetheless easily find that these claims fail on the merits. Soto–Beltran's second claim, that the Court incorrectly determined that imposition of a mandatory minimum sentence was required when he qualified for a safety valve reduction, is plainly belied by the record at sentencing. *See* Sentencing Tr., Mar. 5, 2010, at 15:2–9 ("The mandatory minimum term of imprisonment for Count One would normally be ten years and for Count Two five years. However, pursuant to the safety valve provisions of Title 18 United States Code, Section 3553(f), the Court finds that Mr. Soto Beltran meets the criteria from the position of a sentence in accordance with the applicable Sentencing Guidelines without regard to any statutory minimum sentence."). With respect to Soto–Beltran's third claim, Soto–Beltran's immigration status and his conditions of confinement at MDC Brooklyn were raised by his counsel at sentencing. *See id.* at 7:22–8:8. The Court weighed these factors and others in making its sentencing determination. *See id.* at 15:25–16:7 (taking into account the "history and characteristics of the defendant").