Rafael FRANCISCO, Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. 14 Civ. 07085(VM), 09 Cr. 341(VM).

United States District Court, S.D. New York.

Signed July 9, 2015.

Rafael Francisco, Ayer, MA, pro se.

Laurie Ann Korenbaum, New York, NY, for Respondent.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Petitioner Rafael Francisco ("Francisco") brought a *pro se* motion ("Motion") pursuant to 28 U.S.C. Section 2255 ("Section 2255") to vacate, set aside, or otherwise correct his conviction and sentence. (Dkt. No. 1.) Francisco is currently serving a sentence of 360 months imprisonment after pleading guilty to two counts of aiding and abetting murder through the use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sections 924(j) and 2. Francisco claims he was deprived of his Sixth Amendment right to the effective assistance of counsel, and he requests that his current sentence be vacated or, alternatively, his case be remanded for evidentiary hearings. For the reasons discussed below, the Court DENIES Francisco's motion in its entirety.

### I. BACKGROUND [1]

On February 13, 1997, Oliver Martinez was shot and killed during the course of a robbery of a stash house run by his brother Jose Acosta, a/k/a "Chino." Chino sought to have all those involved in the robbery and homicide (the "Robbery Crew") murdered.

In June 1997, Chino met with a group of men led by Francisco who regularly congregated at a parking lot on 156th Street and Southern Boulevard in the Bronx, New York (the "Parking Lot Crew"). The Parking Lot Crew agreed to commit the murder of Jose Suarez ("Suarez"), one of the Robbery Crew members, in exchange for money.

On June 25, 1997, some members of the Parking Lot Crew, including Francisco, abducted Suarez and his friend Juan Carmona ("Carmona") in the Bronx, New York, by posing as law enforcement officers. Suarez and Carmona were taken to the parking lot where they were beaten, interrogated, and subsequently shot by members of the Parking Lot Crew. Chino paid the Parking Lot Crew members, including Francisco, approximately $50,000 as compensation for the murders.

By indictment filed on April 7, 2009 ("Indictment"), the Government charged Francisco with eight criminal offenses: one count of conspiring to use interstate commerce facilities in the commission of murder-for-hire, resulting in the death of Pedro Medina, in violation of 18 U.S.C. Sections 1958 and 2 ("Count One"); one count of using interstate commerce facilities in the commission of murder-for-hire, resulting in the death of Pedro Medina, in violation of 18 U.S.C. Section 1958 ("Count Two"); one count of possessing and aiding and abetting in the possession of a firearm that was used to murder Pedro Medina, in

---

1. The Court derives the factual and procedural summary below from: (1) Pet. Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody, dated July 8, 2014 (Dkt. No. 1); (2) Movant's Brief in Support of His 28 U.S.C. Section 2255 Mot., dated July 8, 2014 ("Francisco Br.") (*Id.*); (3) Decl. of Movant, dated July 5, 2014 ("Francisco Decl.") (*Id.*); (4) Government's Brief in Opp. to Def.'s Mot. to Vacate, Set Aside, or Correct His Sentence, dated Dec. 22, 2014 ("Opp.") (Dkt.

No. 13); (5) Plea Agreement Bet. Movant and Government, dated Oct. 19, 2012 ("Plea Agreement") (*Id.* Ex. 1); (6) Tr. of Plea Proceeding, dated Oct. 26, 2012 ("Plea Tr.") (*Id.* Ex. 2); (7) Tr. of Sentencing Proceeding, dated September 13, 2013 ("Sentencing Tr.") (*Id.* Ex. 3); and (8) Movant's Traverse to Government's Opp. to Movant's Section 2255 Mot., dated March 20, 2015 ("Reply") (Dkt. No. 12). Except where specifically referenced, no further citation to these sources will be made.

violation of 18 U.S.C. Sections 924(j) and 2 ("Count Three"); one count of conspiring to use interstate commerce facilities in the commission of murder-for-hire, resulting in the deaths of Suarez and Carmona, in violation of 18 U.S.C. Sections 1958 and 2 ("Count Four"); one count of using interstate commerce facilities in the commission of murder-for-hire, resulting in the death of Suarez, in violation of 18 U.S.C. Section 1958 ("Count Five"); one count of using interstate commerce facilities in the commission of murder-for-hire, resulting in the death of Carmona, in violation of 18 U.S.C. Section 1958 ("Count Six"); one count of possessing and aiding and abetting the possession of a firearm used to murder Suarez, in violation of 18 U.S.C. Sections 924(j) and 2 ("Count Seven"); and one count of possessing and aiding and abetting the possession of a firearm used to murder Carmona, in violation of 18 U.S.C. Sections 924(j) and 2 ("Count Eight").

Michael Kim of Kobre & Kim LLP was appointed as Francisco's counsel pursuant to the provisions of the Criminal Justice Act. Francisco's counsel negotiated the Plea Agreement on his behalf, stipulating that Francisco would plead guilty to Counts Seven and Eight of the Indictment. (Dkt. No. 13 Ex. 1.) In return, Counts One through Six of the Indictment would be dismissed. The Plea Agreement stipulated that the United States Sentencing Guidelines ("Sentencing Guidelines") would be applicable, and based on Francisco's offense level, a Sentencing Guidelines range of 360 months to life imprisonment was stipulated. (*Id.*)

Sometime after Francisco's arrest but before he agreed to the Plea Agreement his counsel had negotiated, while he was receiving dialysis treatment in a hospital, he was visited by Kimberly Cole ("Cole"), an attorney at Kobre & Kim LLP, along with an interpreter. Cole advised Francisco against going to trial, allegedly stating

that he had "no chance to win at trial." (Francisco Decl. 2, ¶ 4.) She also allegedly warned him that should he choose to go to trial, he would "never see the light of day again" and "never get to hug or kiss [his] mother ever again." (Francisco Br. 3; Francisco Decl. 2, ¶ 4.) Through repeated visits, Cole allegedly informed Francisco that although she knew that he had no involvement in the crime, the Government had a witness that was willing to testify against Francisco at all costs, including perjuring himself, to reduce his own sentence. (Francisco Br. 3; Francisco Decl. 2, ¶ 5.) Cole allegedly told Francisco that because of his medical condition, the judge would compassionately sentence him in the range of "time served [to] ten, but definitely less than ten years," as he would be "pleading guilty to two weapons charges and [would] most likely get five years for each." (Francisco Br. 4; Francisco Decl. 2, ¶ 6.) She also allegedly stated that the Government had not offered him anything because they knew that he was innocent, and they would not "offer prison time to an innocent man." (Francisco Br. 4; Francisco Decl. 2, ¶ 6.)

On October 26, 2012, Francisco pleaded guilty before the Honorable Henry B. Pitman, United States Magistrate Judge, to Counts Seven and Eight of the Indictment. The Court found that: (1) even though Francisco was under medication for his physical conditions, his cognitive ability and judgment were not affected in any way (Plea Tr. 7); (2) both the Indictment and the Plea Agreement had been translated into Spanish for Francisco (*Id.* 3); (3) Francisco had discussed both the Indictment and the Plea Agreement with his counsel (*Id.* 3); (4) Francisco was "very satisfied" with his counsel's advice (*Id.* 9); (5) Francisco understood the general nature of the charges against him (*Id.* 10–12); and (6) Francisco had discussed the application of the Sentencing Guidelines to his

case with his counsel. (*Id.* 12.) Because Francisco had eyesight problems and had lost his glasses in transit to the hospital, his plea allocution was read to him sentence-by-sentence, while he simultaneously confirmed its truth. (*Id.* 16–17.)

This Court sentenced Francisco on September 13, 2013. (Dkt. No. 13 Ex. 3.) After the parties confirmed that they had reviewed the Presentence Investigation Report and had no objections to it, the Court adopted the factual recitations in the Presentence Investigation Report and calculated the Sentencing Guidelines range to be 360 months to life imprisonment on each of Counts Seven and Eight. The Court then imposed a sentence of 360 months imprisonment on each Count to run concurrently. (Sentencing Tr. 9–10.)

On July 8, 2014, Francisco filed the instant motion in this Court under Section 2255. (Dkt. No. 1.) Francisco alleges that he was denied his Sixth Amendment right to effective assistance of counsel because his counsel: (1) severely underestimated the length of his sentence; (2) failed to explain the Plea Agreement honestly and misrepresented various crucial aspects of the case to him; and (3) improperly coached him on what to say during his plea allocution.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

 At the outset, the Court notes that Francisco is a *pro se* litigant. As such, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993) (internal citation omitted). The Court must construe Francisco's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal citation omitted). A *pro se* litigant, however, is not exempt "from

compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

 The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 374–75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir.2001) ("Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights."). However, criminal defendants asserting ineffective assistance of counsel have a high threshold to meet "in order to deter a baseless attack on the performance of counsel in a last-ditch effort to avoid a conviction or reduce the sentence." *Percan v. United States*, 294 F.Supp.2d 505, 511 (S.D.N.Y.2003); *see also Kimmelman*, 477 U.S. at 382, 106 S.Ct. 2574.

 To prove ineffective assistance of counsel, the petitioner must satisfy a two-prong test. First, he must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." *Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." *Id.* at 689, 104 S.Ct. 2052. Errors in counsel's predictions of a defendant's ultimate sentence under the Sentencing Guidelines generally do not constitute ineffective assistance of counsel because such predictions are, by nature, only guesses or estimates. *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989); *see also Chukwurah v. United States*, 813 F.Supp. 161, 166 (S.D.N.Y.

1993) ("[P]etitioner argues that defense counsel misleadingly assured petitioner that his sentence would be less than 41 months. This contention does not suffice as a basis for an ineffective assistance claim as a matter of law."). Where a defendant is arguing that "counsel has misled him as to the possible sentence which might result from a plea of guilty, the issue is whether the defendant was aware of actual sentencing possibilities." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir.2005) (*quoting Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir.1992)). Furthermore, any allegations a defendant makes in a Section 2255 petition "cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth." *United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir.2001) (per curiam); *see also United States v. Juncal*, 245 F.3d 166, 171 (2d Cir.2001).

■■■■■ Second, the petitioner must also "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94, 104 S.Ct. 2052. The standard of proof is less than a preponderance of the evidence. *See Soto–Beltran v. United States*, 946 F.Supp.2d 312, 317 (S.D.N.Y.2013). However, "some objective evidence other than defendant's assertions [is required] to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir.2003). A "significant disparity" between the peti-

tioner's actual sentence and that imposed on a similarly situated codefendant is sufficient to corroborate plausibly alleged prejudice in a *Strickland* sentencing claim. *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir.2011). Alternatively, a petitioner who pleaded guilty can show a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted in going to trial." *United States v. Boyd*, 407 Fed.Appx. 559, 561 (2d Cir.2011) (*quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)[2]).

### B. APPLICATION

#### 1. Deficient Performance by Counsel

■■■■ Francisco alleges that his counsel: (1) severely underestimated the length of his expected sentence; (2) failed to explain the Plea Agreement honestly and misrepresented various crucial aspects of the case to him; and (3) coached him on what to say during his plea allocution.

#### a. Underestimated Sentence Length

Francisco's first claim is that his counsel severely underestimated his probable sentence if he pleaded guilty pursuant to the Plea Agreement. Francisco alleges that his counsel told him that he would be "pleading guilty to two weapons charges and [would] most likely get five years for each." (Francisco Br. 4; Francisco Decl. 2, ¶ 6.) He further alleges that counsel assured him that the sentencing judge would be compassionate about his medical

---

**2.** The *Hill* Court further elucidated its view of the appropriate focus of this inquiry as follows: "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error

'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. 366.

condition and sentence him in the range of "time served [to] ten, but definitely less than ten years." (Francisco Br. 4; Francisco Decl. 2, ¶ 6.) According to Francisco, these overly optimistic estimations of Francisco's sentence "weakened" his "profound interest [in] going to trial" and constitute ineffective assistance of counsel. (Francisco Br. 4.)

Under *Sweeney*, counsel's statements regarding Francisco's possible sentence cannot be the basis for an ineffective assistance claim, since any representations an attorney makes as to possible sentences are mere estimates. *See Sweeney*, 878 F.2d at 70. Furthermore, at his plea allocution, Francisco acknowledged that he faced a Sentencing Guidelines range of 360 months to life imprisonment for each of Counts Seven and Eight. Francisco also affirmed that he had discussed both the Plea Agreement and the relevant Sentencing Guidelines with his counsel. Based on Francisco's statements, he was "aware of actual sentencing possibilities" he faced after pleading guilty, which is as much as the law guarantees him. *See Arteca*, 411 F.3d at 320. Thus, his ineffective assistance claim based on his counsel's sentencing estimates cannot prevail.

b. *Failure to Explain the Plea Agreement Honestly*

■ Francisco's second argument is that his counsel did not explain the Plea Agreement to him honestly, and made emotionally manipulative misrepresentations to dissuade Francisco from going to trial. He alleges that counsel told him that if he went to trial, "[he] would never see the light of day again" nor get to "hug or kiss [his] mother again." (Francisco Br. 3; Francisco Decl. 2, ¶ 4.) He also alleges that although counsel believed in his innocence, she told him that the government had a witness willing to testify at all costs just to reduce his own sentence, and that Francisco therefore had "no

chance at trial." (Francisco Br. 3; Francisco Decl. 2, ¶ 5.) Finally, he alleges that counsel stated "[t]he Government has not offered you anything because they know that you are innocent and how are they going to offer prison time to an innocent man?" (Francisco Br. 4; Francisco Decl. 2, ¶ 6.) These statements, according to Francisco, succeeded in "severing and over-boring [sic]" his will to go to trial and induced him to plead guilty. (Francisco Br. 4.)

Francisco's allegations have no basis in either fact or law. Counsel's statements that he had "no chance to win at trial", and that he would "never see the light of day again" should he choose to go to trial, were not misrepresentations. The Indictment charged Francisco with two counts of murder for hire, each carrying a mandatory life sentence. *See* 18 U.S.C. Section 1958. Furthermore, two of Francisco's codefendants proceeded to trial and were found guilty of these counts. Both received mandatory life sentences. (Opp. 19.) The Court is persuaded that these statements, even if made by Francisco's counsel, though harsh, were not inaccurate given the charges against Francisco and the plight of his codefendants who chose to go to trial.

As to the statements regarding the Government's witness or the Government's belief in Francisco's innocence, the Court cannot credit Francisco's allegations that implausible and self-serving statements were made. *See Stewart v. Greene*, No. 05 Civ. 0566, 2009 WL 4030833, at *3 (S.D.N.Y. Nov. 19, 2009) ("Self-serving, conclusory allegations are insufficient to establish ineffective assistance of counsel.") (*citing United States v. Torres*, 129 F.3d 710, 715–17 (2d Cir.1997)). Nevertheless, even assuming such unlikely statements were actually made by counsel, they would represent only counsel's view or

predictions of the Government's trial strategies, possibly informed by discussions between the two parties and the previous trials of the co-defendants. Such statements do not constitute ineffective assistance of counsel even if they eventually prove to be inaccurate. *See Rainford v. United States*, 2006 WL 2521398, at *5 (S.D.N.Y. Aug. 31, 2006) ("In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the [Government's] case," and counsel "must predict how the facts, as he understands them, would be viewed by a court.") (*quoting McMann v. Richardson*, 397 U.S. 759, 769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). In any case, even if counsel did make such statements—as to which the Court does not credit Francisco's conclusory allegations—Francisco's belief in them would have been objectively unreasonable given that the Government was prosecuting him, made him a plea offer, and Francisco acknowledged under oath that he understood the sentence he faced. In the Plea Agreement, parties stipulated a Sentencing Guidelines range of "360 months to life imprisonment," and expressly agreed that "neither party will seek any departure or adjustment pursuant to the Guidelines" not set forth therein. (Plea Agreement 4.)

As to Francisco's allegations regarding his lack of understanding of the Plea Agreement, those are plainly contradicted by the record. At Francisco's plea allocution, he confirmed that the Plea Agreement had been translated into Spanish for him, that he had read and reviewed the Plea Agreement with his counsel, that he understood the charges he was pleading guilty to, and that he had discussed the application of the Sentencing Guidelines to his case. The Court expressly asked if Francisco understood that "as part of [his] agreement with the [G]overnment, the appropriate sentencing range is a period of imprisonment of 360 months to life," to which Francisco replied in the affirmative. (Sentencing Tr. 14.) Francisco also confirmed at the plea allocution, contrary to what he claims now, that the medication he was taking at the time did not in any way affect his ability to think or understand. (Plea Trans. 7.) Certainly, if Francisco would then have had the dramatically different impression of the sentence he faced as he now claims his counsel led him to believe, he had sufficient opportunity at his sentencing to speak up. Francisco's guilty plea pursuant to the Plea Agreement was therefore "voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (*quoting Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

### c. *Coached Plea Allocution*

Finally, Francisco alleges that his counsel "coached" him on what to say during his plea allocution and told him that the only way to "get this over with" was to admit to things that he did not do. (Francisco Br. 5; Francisco Decl. 2, ¶ 7.) Francisco also alleges that he was having trouble understanding the translated proceedings through the headphones provided him and would look to counsel, who would signal him on how to respond. (Francisco Decl. 3, ¶ 8.) The Court notes that there is nothing on the record lending support to any of Francisco's allegations. In fact, the circumstances in which Francisco's plea was entered, and Francisco's own sworn statements at the time, belie the selfserving claims he now asserts. The Government notes that Judge Pitman, who questioned Francisco directly and was mere feet away from him, would have witnessed and reported any improper coaching, especially if counsel had used the signals during the plea allocution that Francisco alleges. (Opp. 21.) Furthermore, Francisco, his counsel, and the Gov-

ernment all confirmed that Francisco's mental faculties were fully functioning and that he could process what was going on despite being under medication. (Plea Trans. 7–9.) There is no evidence on the record showing that Francisco had problems understanding the translated proceedings. In fact, Francisco showed no difficulties giving elaborate answers to Judge Pitman's questions and, when given the opportunity to seek clarification, chose not to. (Sentencing Tr. 5.)

### 2. *Prejudice*

Where a defendant fails to satisfy the deficient performance prong of the *Strickland* test, it is unnecessary for the Court to proceed to the prejudice prong. *Smith v. Fischer,* 957 F.Supp.2d 418, 432–33 (S.D.N.Y.2013) ("While the defendant must prove both deficient performance and prejudice, 'there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one'.") (*quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052). The Court finds that Francisco has not met the deficient performance prong of the *Strickland* test, and will not perform a prejudice analysis.

### C. *CONCLUSION*

Because the Court finds that Francisco was unable to show that his counsel's representation fell below an objective standard of reasonableness, the Court finds that Francisco's allegations cannot meet the high threshold set by *Strickland.* Accordingly, the Court must deny the Motion.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 1) of petitioner Rafael Francisco to vacate, set aside, or otherwise correct his conviction and sentence pursuant to 28 U.S.C. Section 2255 is **DENIED.**

The Clerk of Court is directed to terminate any pending motions and to close this case.

The Court certifies, pursuant to 28 U.S.C. Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

As Rafael Francisco has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. Section 2253(c)(1)(B).

**SO ORDERED.**