19CA1377 Peo v Ray 01-27-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1377 Adams County District Court Nos. 13CR2104, 13CR3054 & 14CR2609 Honorable Priscilla J. Loew, Judge Honorable Donald S. Quick, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Dexter Keith Ray, Defendant-Appellant. ORDER AFFIRMED Division VI Opinion by JUDGE HARRIS Navarro and Freyre, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 27, 2022 Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Victor T. Owens, Alternate Defense Counsel, Parker, Colorado, for Defendant-
Appellant 
1 ¶ 1 Dexter Keith Ray appeals the district court’s summary denial of his Crim. P. 35(c) motions. We affirm. I. Background ¶ 2 In 2013 and 2014, Ray was charged with committing the following offenses in three separate criminal cases in which his wife was the primary victim: • 13CR2104 – July 2013: sexual assault, third degree assault, child abuse, violation of a protection order, and obstruction of a telephone or telegraph service; • 13CR3054 – October 2013: tampering with a witness or victim and violation of a protection order; and • 14CR2609 – September 2014: second degree burglary, third degree assault, three counts of child abuse, and violation of a protection order. ¶ 3 The parties agreed to a global disposition of all three cases. Pursuant to that agreement, Ray pleaded guilty in the 2013 cases (which had previously been joined) to one count of attempted sexual assault and one count of conspiracy to commit witness or victim tampering, both class 5 felonies, and, in the 2014 case, to one 
2 count of first degree criminal trespass, a class 5 felony, and three counts of misdemeanor child abuse. ¶ 4 The case proceeded to sentencing in March 2015. Because Ray had pleaded guilty to a sex offense, the court ordered that an offense specific psychological evaluation be conducted in addition to a presentence investigation report (PSI). The offense specific evaluation does not appear to be in the record, but the court discussed it at the sentencing hearing. The court specifically noted that Ray had provided a lengthy statement in which he “acknowledge[d] that there was a sexual assault” and “g[ave] an explanation for it.” As a result, the court discounted the victim’s statement at the hearing that Ray had not sexually assaulted her: “No matter how much [the victim] stands here repeatedly and says it didn’t happen, the fact is Mr. Ray says it did.” The court also recognized that Ray had “mental health issues” that were “no doubt” connected to “a horrific childhood.” After carefully considering all of the circumstances, the court sentenced Ray to concurrent three-year terms of imprisonment in the 2013 cases, and a consecutive three-year term of imprisonment in the 2014 case. 
3 ¶ 5 Through counsel, Ray then filed a Crim. P. 35(b) motion for reconsideration of his sentences. The motion reiterated that Ray had admitted to the assault, had acknowledged that he “could benefit from ‘sexual misconduct’ treatment,” and had endured a traumatic childhood resulting in mental health issues. The court denied the motion, finding that it had considered all relevant information at the sentencing hearing and that the original sentence was appropriate. ¶ 6 In October 2017 and August 2018, Ray filed two pro se Crim. P. 35(c) motions.
1 The first motion, submitted on a preprinted form, alleged only that “[at the sentencing hearing, the] alleged victim told the court that I did not commit [the] crimes of 13CR2104, 13CR3054, and 14CR2609.” In response to the question, “If you did not appeal, briefly explain why you did not,” Ray wrote, 1 The district court initially denied Ray’s Crim. P. 35(c) motions as untimely, but later rescinded that order after realizing that Ray had filed his initial motion within the three-year deadline for challenging a felony conviction. The court did not address the fact that Ray appeared to be challenging the validity of his misdemeanor child abuse convictions as well. A collateral attack on a misdemeanor conviction must be filed within eighteen months of the entry of judgment — or, in Ray’s case, by September 3, 2016. See § 16-5-
402(1), C.R.S. 2021. Accordingly, we construe Ray’s Rule 35(c) motions to challenge only his felony convictions. 
4 “Because I took a plea deal before the victim addressed the court on 03/03/15.” ¶ 7 The second motion raised additional claims as follows: • Counsel failed to “admit evidence” of a notarized letter written by the victim in which she recanted her earlier report to police and asserted that while Ray had hit her, he had not sexually assaulted her. • Counsel failed to take some unspecified action with respect to a 911 call in which the victim recanted accusations related to the charges in 14CR2609. • The victim’s letter constituted newly-discovered evidence. • At some point during the pendency of the case, the victim appeared at counsel’s office and acted “belligerent and threatening,” thereby creating “an actual conflict of interest.” • Counsel failed to inform Ray that he could appeal the trial court’s denial of the Rule 35(b) motion. • Counsel failed to inform Ray that he could directly appeal his conviction. 
5 • Counsel instructed Ray not to deny the sexual assault accusations during his PSI interview or he would “definitely be denied any possibility of community corrections or probation.” • Counsel coerced Ray into accepting the plea deal by advising him that if he went to trial and lost, he could face up to sixty-four years in prison. ¶ 8 Later, appointed counsel filed a supplemental Rule 35(c) motion, alleging that Ray “was coerced into pleading guilty to attempted sexual assault” because his public defender failed to “provide exculpatory evidence” — the letter from the victim — to the prosecutor during plea negotiations. As postconviction counsel explained, Ray “expected his public defender to show the . . . letter from [the victim] to [the prosecutor] in order to secure a dismissal of the sexual assault count.” But when the public defender did not use the letter during plea negotiations, “in his mind,” Ray believed that counsel would not use the letter at trial either, and so he had to plead guilty or “risk going to trial without an adequate defense.” ¶ 9 The postconviction court summarily denied Ray’s postconviction motions. With respect to the primary claim — that counsel was ineffective for failing to use the victim’s letter during 
6 plea negotiations — the court concluded that trial counsel had made a reasonable strategic decision to forgo using the letter because it had “little to no exculpatory value” and, in fact, might support the theory that Ray was controlling and abusive in his relationship with the victim. As for the remaining claims, the court found that the allegations were conclusory or that, even if true, they did not state a claim for relief. II. Discussion ¶ 10 On appeal, Ray contends that the district court erred by denying his postconviction motions without a hearing. We disagree. Though our reasoning differs in certain respects from that of the district court, see, e.g., People v. Ortega, 266 P.3d 424, 426 (Colo. App. 2011) (appellate court may affirm district court’s ruling on any ground supported by the record), we agree with the court’s conclusion that Ray’s motions fail to state a claim for postconviction relief. A. Legal Principles and Standard of Review ¶ 11 To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel’s performance was deficient, meaning it fell below an objective standard of reasonableness; and 
7 (2) the deficient performance prejudiced the defendant, meaning there is a reasonable probability that, but for counsel’s errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). To establish prejudice after a guilty plea, the defendant must show that if counsel had performed competently, he would have rejected the plea offer and insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). If a defendant fails to establish either prong of the Strickland test, he is not entitled to relief. People v. Osorio, 170 P.3d 796, 800 (Colo. App. 2007). ¶ 12 A postconviction motion alleging ineffective assistance of counsel may be denied without a hearing if the defendant’s allegations are bare and conclusory; the allegations, even if true, do not establish deficient performance or prejudice; or the record refutes the defendant’s claims directly. People v. Duran, 2015 COA 141, ¶ 9. ¶ 13 We review de novo the summary denial of a Rule 35(c) motion. People v. Lopez, 2015 COA 45, ¶ 68. 
8 B. The Postconviction Motions Fail to State a Claim ¶ 14 On appeal, Ray reasserts five of the claims raised in his Rule 35(c) motions. (Any claims raised in the motions but not reasserted on appeal are deemed abandoned. See People v. Delgado, 2019 COA 55, ¶ 11 n.3.) He contends that counsel was ineffective for (1) failing to use the victim’s letter during plea negotiations; (2) coercing him to plead guilty by advising him of his sentencing exposure; (3) failing to advise him that he had a right to appeal his convictions; (4) failing to advise him that he had a right to appeal the denial of his Rule 35(b) motion; and (5) representing him despite an actual conflict of interest. 1. Failure to Use the Victim’s Letter ¶ 15 Ray argues, as he did in his supplemental Rule 35(c) motion, that counsel’s performance was deficient because she failed to “utilize available exculpatory evidence during plea negotiations or formulation of a theory of defense showing Mr. Ray did not sexually assault his wife.” Counsel’s failure to use the letter prejudiced him, Ray says, because it “caused [him] to lose all confidence in his attorney and plead guilty.” 
9 ¶ 16 We discern at least two problems with this claim. First, Ray’s allegation is that counsel’s deficient performance caused him to lose confidence in counsel’s commitment to “unveil[ing] the truth,” which, in turn, caused him to plead guilty. But under Strickland’s test, the lawyer’s deficient performance must itself cause the prejudice. Strickland, 466 U.S. at 693-94 (explaining that it is “not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding”; instead, the defendant must show that “but for counsel’s unprofessional errors,” the outcome would have been different”). ¶ 17 Ray’s allegation of prejudice, which turns on his own subjective beliefs about his lawyer’s commitment to the case, is simply too attenuated from the lawyer’s alleged deficient performance. See, e.g., Soto-Beltran v. United States, 946 F. Supp. 2d 312, 318 (S.D.N.Y. 2013) (counsel’s alleged deficient performance in failing to secure a plea offer allowing for cooperation was too attenuated from defendant’s claim of prejudice that he failed to get a cooperator’s sentencing benefit). There is direct and logical prejudice that flows from an allegation that counsel failed to share exculpatory evidence with the prosecutor during plea 
10 negotiations: that the plea offer was not as favorable as it should have been and, if counsel had performed competently, the defendant would have accepted an offer of a shorter sentence. But Ray does not make that argument because it does not satisfy the prejudice requirement that goes with his claim. He has to show that in the absence of counsel’s error, he would have rejected any plea offer and gone to trial. As a result, he is forced to devise a theory of prejudice that simply fails to connect sufficiently to counsel’s alleged deficient performance. ¶ 18 Second, the claim amounts to an allegation that counsel had a contrary view of the utility of the victim’s letter and, as a result, Ray felt compelled to plead guilty. But disagreements about defense strategy alone do not support a claim of ineffective assistance of counsel. See People v. Apodaca, 998 P.2d 25, 29 (Colo. App. 1990). We must “indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance,” and the defendant “must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.”’ Lopez, ¶ 59 (quoting Strickland, 466 U.S. at 689). Ray did not allege any facts that, if true, would overcome the 
11 presumption. For example, he did not allege that counsel’s failure to use exculpatory evidence was based on a lack of investigation. See Fisher v. Gibson, 282 F.3d 1283, 1296 (10th Cir. 2002) (where counsel has utterly failed to prepare or investigate, she cannot rely on a claim of strategy to show that her conduct was not deficient). To the contrary, he acknowledged that his lawyer directed an investigator to interview the victim, and counsel then shared the letter and the notes of the interview with Ray at the jail. ¶ 19 In his reply brief, Ray argues that even if the victim’s recanting letter was so unreliable as to be useless, counsel was nonetheless ineffective for failing to sufficiently explain her reasons for not presenting it to the prosecutor. This argument depends on the same attenuated theory of prejudice: without a sufficient explanation, a defendant might feel so ignored by his lawyer that he would feel compelled to plead guilty. But the merits of an ineffective assistance of counsel claim cannot turn on the psychological fortitude of a particular defendant. A lawyer’s performance is only deficient if it is objectively unreasonable. See People v. Terry, 2019 COA 9, ¶ 25. In any event, Ray did not allege in any of his postconviction motions that counsel was ineffective for 
12 failing to communicate her reasons for not using the victim’s letter, so we do not consider that argument on appeal. See People v. Stovall, 2012 COA 7M, ¶ 3 (allegations not raised in the Rule 35(c) motion or during a hearing on the motion are not properly preserved and may not be raised for the first time on appeal). ¶ 20 Accordingly, we conclude that the district court properly denied this claim without a hearing. 2. Advisement Regarding Possible Sentence ¶ 21 Next, Ray argues that he was coerced into pleading guilty because counsel warned him that he could face a sixty-four-year sentence if he were convicted of the original charges after a trial. Because Ray has failed to allege deficient performance, this claim fails. ¶ 22 Counsel has a duty to inform a client about the risks of going to trial, which includes advice about the maximum potential sentence. See Carmichael v. People, 206 P.3d 800, 806 (Colo. 2009) (counsel’s performance was deficient where counsel failed to inform his client that he would face indeterminate life sentences if he proceeded to trial). Ray does not allege that counsel’s advisement was inaccurate. Instead, in his motions, he implied only that the 
13 threat of a long sentence induced his guilty plea, rendering it involuntary. The Supreme Court, however, has “rejected the argument that a guilty plea is invalid whenever motivated by the defendant’s desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction of a more serious crime.” People v. McCormick, 881 P.2d 423, 427 (Colo. App. 1994) (citing Brady v. United States, 397 U.S. 742, 750 (1970)); see also Simons v. State, 719 S.W.2d 479, 481 (Mo. Ct. App. 1986) (“For counsel to predict the possibility of a lengthy sentence following a jury trial does not amount to a coerced and involuntary plea.”). ¶ 23 On appeal, Ray therefore raises a new argument, hypothesizing that counsel’s “demeanor, tone of voice, or method of communication” may have placed “undue pressure” on him to plead guilty. True, a guilty plea is involuntary and therefore invalid if it is obtained “by actual or threatened physical harm or by mental coercion overbearing the will of the defendant.” Brady, 397 U.S. at 750; see also Sanchez-Martinez v. People, 250 P.3d 1248, 1255 (Colo. 2011) (A guilty plea is not valid if it is the product of “such factors as misunderstanding, duress, or misrepresentation by 
14 others.” (quoting Blackledge v. Allison, 431 U.S. 63, 75 (1977)). But in his motions, Ray did not allege that his lawyer’s demeanor, tone of voice, or manner of communication overbore his will. A defendant is not entitled to an evidentiary hearing to try to develop new theories or claims; he is entitled to a hearing only if he “allege[s] facts that, if proven, would entitle him to postconviction relief.” White v. Denver Dist. Ct., 766 P.2d 632, 636 (Colo. 1988). ¶ 24 Moreover, the record refutes any suggestion that counsel threatened or coerced Ray into accepting the global plea deal that greatly reduced his sentencing exposure. During the providency hearing, Ray unequivocally affirmed that he was entering his guilty pleas “knowingly and voluntarily.” He told the court that no one had “forc[ed] [him] or put[] any pressure upon” him to enter his pleas. While a defendant’s colloquy with the court at the providency hearing is not necessarily dispositive of the validity of his or her guilty plea, see, e.g., People v. Morones-Quinonez, 2015 COA 161, ¶ 17, the appellate court can consider the defendant’s statements at the providency hearing in determining whether an evidentiary hearing is warranted, see People v. Canody, 166 P.3d 218, 220 (Colo. App. 2007). 
15 ¶ 25 Based on the lack of factual allegations in the motions and Ray’s statements at the providency hearing, we conclude that the court properly denied the claim of coercion without a hearing. 3. Right to Direct Appeal ¶ 26 Third, Ray argues that counsel was ineffective for failing to advise him of his right to a direct appeal. Here, too, he has failed to allege deficient performance or prejudice with sufficient specificity. ¶ 27 Counsel’s failure to file a notice of appeal is not necessarily deficient so long as counsel has not disregarded specific instructions from a defendant. Roe v. Flores-Ortega, 528 U.S.470, 478 (2000). When counsel receives no instruction from the defendant on whether to file or forgo an appeal, the question is whether counsel has a duty to consult with the defendant about his appeal rights. Id. That duty arises only when counsel has a reason to think that (1) a rational defendant would want to appeal (because, for example, there are nonfrivolous grounds for appeal) or (2) the particular defendant is interested in appealing. Id. at 480. ¶ 28 Thus, it is not enough for Ray to state only that his lawyer did not advise him of his right to appeal. On its own, that failure does not constitute deficient performance. To sufficiently allege deficient 
16 performance, Ray had to assert that his lawyer had a duty to consult with him about his appeal rights, either because there were nonfrivolous grounds for a direct appeal despite his guilty plea, see Laycock v. State, 880 F.2d 1184, 1188 (10th Cir. 1989) (“Normally, when a defendant pleads guilty, he has foreclosed his right to appeal.”), or because he indicated some interest in appealing. He has asserted neither. ¶ 29 Nor has he alleged any prejudice from counsel’s failure to advise him of his rights. To establish prejudice, a defendant must demonstrate “that, but for counsel’s deficient conduct, he would have appealed.” Flores-Ortega, 528 U.S. at 486. Ray has never alleged that if counsel had consulted with him, he would have directly appealed his convictions. In fact, on his preprinted postconviction form, he explained that he did not file a direct appeal not because he was unaware of his rights, but because he pleaded guilty before the victim addressed the court at sentencing. ¶ 30 Thus, Ray’s allegations, even if true, are insufficient to state a claim for relief, and the district court properly denied this claim without a hearing. 
17 4. Right to Appeal Crim. P. 35(b) Motion ¶ 31 In his next claim, Ray alleges that counsel was ineffective for failing to advise him of his right to appeal the denial of his Rule 35(b) motion. This claim fails on the prejudice prong. ¶ 32 Defendants have only a limited right to appeal the denial of a motion for reconsideration of a sentence. See People v. Barnett, 2020 COA 167, ¶ 31. The propriety of the sentence is not subject to review; rather, the order is reviewed to “determine if the postconviction court failed to exercise its judicial discretion by refusing to consider any information in mitigation.” Id. ¶ 33 Ray did not allege that he was entitled to a review of the order denying his Rule 35(b) motion because the court had failed to properly exercise its discretion or refused to consider mitigating evidence. Nor did he allege that he would have filed an appeal of the order if his lawyer had advised him of his appeal rights. And the record shows that the Rule 35(b) motion advanced arguments expressly considered by the court at sentencing. ¶ 34 Thus, this claim, too, was properly denied without a hearing. 5. Conflict of Interest 
18 ¶ 35 Finally, Ray argues that counsel was ineffective because she “labor[ed] under a conflict of interest.” The allegations with respect to this claim are conclusory. ¶ 36 In his motions, Ray alleged that a conflict of interest arose after the victim showed up at counsel’s office and acted in a belligerent and threatening manner. But he did not explain the nature of the conflict or how it supposedly affected counsel’s performance. ¶ 37 On appeal, it is not even clear what kind of a conflict Ray contends is at issue — whether counsel had an actual conflict of interest based on divided loyalties, see, e.g., West v. People, 2015 CO 5, ¶ 16, or whether counsel had a conflict with Ray that resulted in a complete breakdown in communication, see People v. Bergerud, 223 P.3d 686, 694 (Colo. 2010) (differentiating between a conflict of interest and complete breakdown in communication between counsel and the defendant). ¶ 38 In any event, his motions did not allege any facts that would establish either kind of conflict. Without additional factual allegations, the claim is too conclusory to warrant a hearing. 
19 ¶ 39 For the first time on appeal, Ray asserts that the victim’s conduct “raises the concern” that counsel might have “wished to end representation of Mr. Ray in order to prevent future disturbances,” and would have been “predisposed to seeking a plea agreement.” That argument is still insufficient. For one thing, it is hypothetical — Ray does not allege that his lawyer was so affected by the victim’s conduct that she wanted to end the representation. Instead, he says that the circumstances raise this concern. The argument also lacks any allegation that counsel’s wish to “end [the] representation” and “seek[] a plea agreement” prejudiced Ray. Ray ultimately accepted the plea offer, so the existence of prejudice is not obvious. ¶ 40 Accordingly, we agree with the district court that Ray’s claim of a conflict of interest is vague and conclusory and therefore does not warrant a hearing. III. Conclusion ¶ 41 The order is affirmed. JUDGE NAVARRO and JUDGE FREYRE concur.