36 P.3d 778 (2001)
The PEOPLE of The State of Colorado, Plaintiff-Appellee,
v.
Nathan DUNLAP, Defendant-Appellant.
No. 00SA191.
Supreme Court of Colorado, En Banc.
September 10, 2001.
Rehearing Denied October 22, 2001.
Certiorari Denied January 7, 2002.
*779 Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Criminal Justice Section, Appellate Division, Denver, CO, Attorneys for Plaintiff-Appellee.
Philip A. Cherner, Denver, CO, Michael J. Heher, Captain Cook, HI, Attorneys for Defendant-Appellant.
Certiorari Denied January 7, 2002. See 122 S.Ct. 844.
Justice KOURLIS delivered the Opinion of the Court.
In 1996, after deliberation, a jury convicted Defendant Nathan Dunlap of four counts of first degree murder arising out of murders he committed at the Chuck E. Cheese restaurant on December 14, 1993, and sentenced him to death. We affirmed his death sentence on direct appeal in People v. Dunlap, 975 P.2d 723 (Colo.1999). The trial court also sentenced Dunlap to consecutive terms of incarceration in the Department of Corrections totaling 113 years for the related non-capital convictions.[1]Dunlap, 975 P.2d at 735. Dunlap filed a motion for reduction both of his death sentence and of his other sentences pursuant to Crim. P. 35(b). The trial court denied that motion without a hearing, and Dunlap now appeals that order, claiming that the trial court abused its discretion. We affirm the trial court's denial of the motion.
We hold that section 16-11-103(2)(c), 6 C.R.S. (Supp.1993)[2] defined a trial court's authority to reduce a death sentence imposed by a jury, and Crim. P. 35(b) did not vest a trial court with additional or inconsistent authority. Here, the trial court properly relied upon the standard enunciated in the statute in denying Dunlap's motion. Additionally, we hold that the trial court did not abuse its *780 discretion in declining to reduce Dunlap's additional sentences.

I.
We begin by addressing Dunlap's argument that the trial court abused its discretion by denying his Crim. P. 35(b) motion for reconsideration of his death sentence.
At the sentencing hearing on May 17, 1996, the trial court specifically found that the jury's sentence of death was not clearly erroneous as contrary to the weight of the evidence. Dunlap's Crim. P. 35(b) motion asserts that the sentence was excessive and unnecessary. Dunlap requested a hearing, at which he represented that he would present mitigation evidence and stated that he was "entitled to have the court re-consider the entirety of the sentencing considerations." Lastly, Dunlap requested an extension of time within which to supplement the record on matters of mitigation.
The trial court denied the motion without a hearing, declined to grant an extension of time, and concluded, "it should not disturb the jury's sentence in this case."

A.
Dunlap argues that the trial court confused the requirements of section 16-11-103 with the requirements of a Crim. P. 35(b) motion, thereby violating his due process and equal protection rights by requiring him to prove that his death sentence was clearly erroneous as contrary to the evidence. Dunlap claims that the standards for review of a Crim. P. 35(b) motion cannot be reconciled with the capital sentencing scheme as it existed when his sentencing occurred. We disagree.
Colorado Rule of Criminal Procedure 35(b) provides:
Reduction of Sentence. The court may reduce the sentence provided that a motion for reduction of sentence is filed (1) within 120 days after the sentence is imposed, or (2) within 120 days after receipt by the court of a remittitur issued upon affirmance of the judgment or sentence or dismissal of the appeal, or (3) within 120 days after entry of any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence. The court may, after considering the motion and supporting documents, if any, deny the motion without a hearing. The court may reduce a sentence on its own initiative within any of the above periods of time.
Crim P. 35(b) enables trial courts to review a sentence to ensure that it is proper before making it final. Ghrist v. People, 897 P.2d 809, 812 (Colo.1995). A court's review of a Crim. P. 35(b) motion focuses on the fairness of the sentence in light of the purposes of the sentencing laws. Id. Any decision to reduce a sentence based on a Crim. P. 35(b) motion remains within the sound discretion of the trial court. Id. In its analysis, the trial court may consider all relevant and material factors, including new evidence as well as facts known at the time the court pronounced the original sentence. Spann v. People, 193 Colo. 53, 55, 561 P.2d 1268, 1269 (1977).
At the time Dunlap committed the murders at Chuck E. Cheese, our statutes required the jury in a capital case to determine whether a defendant found guilty of the charged offenses would face life imprisonment or death. See § 16-11-103(1)(a). Here, the jury unanimously found the presence of 28 aggravating factors and insufficient mitigating factors to outweigh the aggravators and thus unanimously determined that death constituted the appropriate sentence. See § 16-11-103(2)(b). Section 16-11-103(2)(c) mandated that a jury's imposition of a death sentence "shall be binding upon the court unless the court determines, and sets forth in writing the basis and reasons for such determination, that the verdict of the jury is clearly erroneous as contrary to the weight of the evidence, in which case the court shall sentence the defendant to life imprisonment." At the time of sentencing, the court specifically addressed the appropriateness of a death sentence for Dunlap. In accordance with section 16-11-103, the trial court found, on the record and in open court, from its review of the evidence presented to the jury throughout trial and the sentencing phase, that the jury's sentence was not clearly erroneous as contrary to the weight of the evidence.
*781 Hence, the question this case presents is whether a death sentence imposed and reviewed under section 16-11-103 may then be revisited under Crim. P. 35(b). We note this case does not concern a motion under Crim. P. 35(a) wherein the defendant alleges the sentence to be illegal; or a motion under Crim. P. 35(c) wherein the defendant alleges the sentence to be unconstitutional; or a motion for new trial under Crim. P. 33. Rather, this case involves a motion for reduction of sentence addressed purely to the discretion of the trial court.
Under Crim. P. 35(b), the court's discretion is constrained by applicable statutory limits. People v. Fuqua, 764 P.2d 56, 60 (Colo.1988). Hence, the trial court must operate within the statutory sentencing construct. Crim. P. 35(b) cannot expand the trial court's authority in resentencing beyond that which it had initially. See People v. Smith, 971 P.2d 1056, 1061 (Colo.1999). The same statutes that governed the original sentencing limit the trial court's authority on resentencing. In a jury-imposed death penalty case, the statute provided that the trial court had no authority to reduce that death sentence if the sentence comported with the statutory requirements. See Burch v. State, 358 Md. 278, 747 A.2d 1209, 1212 (2000) (finding that a trial court may not reconsider or modify a death sentence imposed pursuant to a jury determination because that action would conflict with the legislative scheme); State v. Guzman, 102 N.M. 558, 698 P.2d 428, 429 (1985) (holding that when a jury imposes a death sentence the trial court is statutorily bound by it and may not impose a modified sentence that it could not impose at the time of the original sentencing); Hopkinson v. State, 704 P.2d 1323, 1326 (Wyo.1985) (finding that the mandatory language of the capital sentencing scheme prevents a trial judge from reducing the jury's binding sentence of death to life imprisonment).[3]
Dunlap argues that the statutory exception allowing a judge to reduce a capital defendant's death sentence to life imprisonment articulated in section 16-11-103(2)(c) contradicts the standard set forth in Crim. P. 35(b). To the contrary, we read the statute to set forth specific circumstances under which a trial court may overturn a jury sentence of death. The statute provided that a jury's verdict of death "shall be binding" on a court after the court finds it not contrary to the weight of the evidence. Crim. P. 35(b), on the other hand, is discretionary and contemplates that a court "may" reduce a defendant's sentence. Hence, the statute and the rule together direct that a court may only order post-conviction relief pursuant to Crim. P. 35(b) from a death sentence imposed by a jury if the circumstances delineated in section 16-11-103(2) are met.
Here, the trial court specifically found that the evidence supported the death sentence. Such a finding circumscribed the limits of the court's authority to overturn that sentence under either XX-XX-XXX(2) or to reduce it under Crim. P. 35(b).

B.
Dunlap argues that the trial court erred by refusing to take into consideration the additional materials he sought to present addressing his abusive childhood, his positive personal qualities and the impropriety of the People's presentation of evidence regarding Dunlap's future dangerousness in the penalty phase of his trial. The argument is misplaced in a Crim. P. 35(b) motion as it relates to a death sentence.
As the trial court noted at the sentencing portion of the trial, Dunlap had ample opportunity to present a mitigation case. Dunlap ultimately presented mitigation evidence on only three of the twelve statutory mitigating factors. See Dunlap, 975 P.2d at 737-38. In Dunlap's direct appeal, we addressed the mitigation evidence he presented:

*782 Dunlap's mitigating evidence centered on the existence of three mitigating factors: his age, his cooperation with the police, and his abusive home environment. With regard to the first two factors, Dunlap introduced evidence indicating that he was nineteen years old at the time he committed the murder and suggesting that out of concern for his girlfriend, his family, and the community, he offered to plead guilty in exchange for four life sentences. Dunlap also presented testimony indicating that his step-father physically abused him, even at his school and place of work. Moreover, Dunlap put on evidence that his mother, who suffered from bipolar disorder and was prone to experiencing disruptive "episodes" of mental illness, mentally abused him and refused to cooperate with the juvenile court system's early attempts to rehabilitate him. Finally, the testimony of one of Dunlap's witnesses suggested that Dunlap was aware that his step-father had sexually abused his sister.
Dunlap, 975 P.2d at 764-65.
Whether a defendant would be entitled to a new trial upon presentation of new mitigation evidence is clearly problematic, and in any event, is a question not before us today. Rather, Dunlap asserts that he is entitled to a post-conviction reduction in sentence by a trial court due to new mitigation evidence. As we have stated, the trial court has no authority to grant that relief unless the evidence at the trial (including the sentencing phase) does not support the death sentence. Furthermore, the trial court concluded that Dunlap's additional evidence tendered in support of the motion was "nearly identical to that presented at the sentencing hearing." The jury considered that evidence during the penalty phase and nonetheless rendered a verdict of death.[4]
A 35(b) motion is not an appropriate forum in which to present a mitigation case. See People v. Busch, 835 P.2d 582, 583 (Colo.App. 1992). In this case, the trial court properly considered the additional mitigation evidence presented by Dunlap in conjunction with the evidence Dunlap presented to the sentencing body at trial. The trial court determined that the evidence was "parallel" to that presented to the jury and to the court and did not therefore alter that court's conclusion that the death sentence was not contrary to the weight of the evidence. The trial court did not abuse its discretion when it denied relief under Crim. P. 35(b).

II.
We next address Dunlap's argument that the trial court failed to enter findings and conclusions regarding Dunlap's request to reduce his 113-year sentence for the other convictions. Dunlap argues that the trial court abused its discretion and violated Dunlap's right to due process of law by focusing only on the refusal to reduce the death penalty in the Order Denying Defendant's Motion for Sentence Reconsideration Pursuant to Crim. P. 35(b) and Motion for Hearing.
Clearly, the death sentence is the controlling sentence and the balance of the sentences become operative only if the death sentence is somehow vitiated. Accordingly, the parties and the court are compelled to focus primarily on the death sentence, as the trial court did in addressing Dunlap's Crim. P. 35(b) motion.
Crim. P. 35(b) affords trial judges a large amount of discretion when considering the defendant's motion. Mikkleson v. People, 199 Colo. 319, 321, 618 P.2d 1101, 1102 (1980). Although Crim. P. 35(b) does not require the trial court to make findings of fact, we held, in People v. Bridges, that the trial court should provide a statement of the basic reasons in support of its ruling. 662 P.2d 161, 165-66 (Colo.1983).
Here, the trial court did provide a statement of its reasons in denying the Crim. P. *783 35(b) motion. The judge who denied the Crim. P. 35(b) motion was the same judge who presided over the guilt and sentencing phases of the trial and who then sentenced Dunlap to the additional 113 years. He noted in his order that the mitigation evidence was "nearly identical to that presented at the sentencing hearing."
Even though Dunlap's Crim. P. 35(b) motion requested that the trial court "reduce the sentences in this case, including the death sentence," the text of the motion focused entirely on the reasons why the new mitigating evidence should compel the trial judge to reduce Dunlap's death sentence to a sentence to life in prison. Likewise, the trial judge's order denying the Crim. P. 35(b) motion focused mainly on refuting Dunlap's argument for reduction of the death sentence.
However, the trial court's order denies Dunlap's full Crim. P. 35(b) motion, including the non-death sentences. The court did not bifurcate its findings and tie them either to the motion to reduce the death sentence or the motion to reduce the 113-year sentences. Rather, the order makes it clear that the court declines to reconsider any portion of Dunlap's sentence both because he felt appropriately bound by the jury's verdict as to the death sentence and because the information Dunlap provided in the Crim. P. 35(b) motion essentially paralleled the information the judge and jury heard at the sentencing hearings. The trial court's order adequately demonstrates that the trial judge considered the mitigating factors presented in the motion and determined that they did not warrant a sentence reduction. Consequently, the trial judge's denial of the whole Crim. P. 35(b) motion, including the non-death portion of Dunlap's sentence, without a hearing was not an abuse of discretion and the order satisfies the Bridges requirement that the court explain its reasoning for denying the motion.

III.
In conclusion, we hold that section 16-11-103 limited a trial court's authority to reconsider a death sentence entered by a jury, and Crim. P. 35(b) cannot supersede or contravene those limits. The trial court here did not err in refusing to reduce Dunlap's death sentence under that rule. Further, as to the 113-year sentences, we conclude that the trial court sufficiently reviewed the tendered evidence in support of reduction of the sentences, made adequate, broad findings and thus did not abuse its discretion by denying the motion in total. Thus, we affirm the trial court's judgment.
Justice MARTINEZ concurring in part and dissenting in part.
The Majority holds that section 16-11-103(2)(c), 6 C.R.S. (2000), defines the trial court's authority to reduce a death sentence imposed by the jury and that Crim. P. 35(b) does not provide the trial court with additional or inconsistent authority. Maj. op at 779. Accordingly, the Majority concludes that the trial court properly relied upon the standard set forth in section 16-11-103(2)(c) in denying Dunlap's Crim. P. 35(b) motion for post-conviction relief with respect to the death penalty. Maj. op. at 779. I concur with this part of the majority decision.
However, the Majority further determined that the trial court denied Dunlap's request to reduce the non-capital sentences, provided a statement of the basic reasons for denying the motion as required by People v. Bridges, 662 P.2d 161 (Colo.1983), and did not abuse its discretion by doing so. Maj. op. at 780, 782. While I agree that the trial court has the discretion to deny the request to reduce the non-capital sentences, I cannot determine from its order whether the trial court actually ruled on this part of the motion. I particularly disagree with the assertion of the Majority that the order clearly indicates that the trial court denied the Crim. P. 35(b) motion with regard to Dunlap's non-capital sentences. See id. at 783. On the contrary, the trial court order can easily be read as failing to address the non-capital sentences. Thus, I conclude that the trial court's order is ambiguous as to whether the trial court also addressed Dunlap's Crim. P. 35(b) motion with regard to the non-capital sentences.
Dunlap specifically requested both reconsideration of the death sentence and reduction *784 of his non-capital sentences in the opening phrase of his Crim. P. 35(b) motion. The remainder of Dunlap's fifteen-page motion addresses the death sentence in great detail and alleges many factual circumstances that could be sentencing considerations. Except for the opening phrase, Dunlap's motion could be easily read as addressing only the death sentence. Thus, the motion is susceptible to being misread as addressing only the death sentence.
If the trial court had simply denied Dunlap's Crim. P. 35(b) motion, without further discussion, one could reasonably conclude that the trial court intended to deny the motion in its entirety. However, the trial court exclusively discussed Dunlap's death penalty sentence in a three-page order before simply concluding, "The [c]ourt now denies the motion without a hearing." Because the trial court did not make any reference to Dunlap's non-capital sentences, I cannot discern whether the trial court understood that the motion also requested reduction of Dunlap's non-capital sentences.
The Majority relies on language in the second page of the trial court order in support of its conclusion that the trial court addressed the non-capital sentences and provided a statement of its basic reasons for denying the request to reduce these sentences. As the Majority states, the trial court concluded that the evidence in support of Dunlap's Crim. P. 35(b) motion was "nearly identical to that presented at the sentencing hearing." Id. at 782. However, the remainder of that sentence indicates that "when that evidence was considered by the sentencing authority (in this case, the Colorado Springs jury), a court may properly exercise its discretion in denying the motion." It appears to me that in this language the trial court order only addresses the death sentence decided by the jury and makes no reference to the non-capital sentences imposed by the trial court. Thus, I do not believe that this sentence in the trial court's order provides support for the Majority's conclusion that the trial court's order addressed the non-capital sentences.
Under these circumstances, I cannot agree that the trial court clearly denied Dunlap's Crim. P. 35(b) motion to reduce the non-capital sentences and provided a statement of the basic reasons in support of its decision as we required in Bridges. It is equally possible that the trial court overlooked Dunlap's non-capital sentences.
Finally, the non-capital sentences are not controlling in this case because the convictions for first degree murder remain intact. Therefore, I readily acknowledge that the non-capital sentences, although totaling 113 years, are relatively insignificant. It may also appear that the trial court would be highly unlikely to reduce these sentences based on the same allegations it found insufficient to overturn the death sentence. Thus, to delay this case in order to determine whether the trial court has already denied the request to reduce the other sentences is not attractive. Nonetheless, the request to reduce the non-capital sentences is properly addressed to the sound discretion of the trial court and must be resolved by that court. Any minor delay occasioned by the difficulty of determining whether the trial court exercised its discretion must be tolerated to assure that this matter is properly resolved on its merits. It is a simple matter to have the trial court clarify its order.
Accordingly, I would remand this case for the trial court to clarify its order to indicate whether it intended to deny the request to reduce the non-capital sentences. Further, I would direct the trial court to issue an order on the non-capital sentences if it has not already denied the request. Therefore, I concur with respect to the death sentence and I respectfully dissent with respect to the other sentences.
NOTES
[1] The jury convicted Dunlap of one count of attempted first degree murder after deliberation, one count of attempted first degree felony murder, first degree burglary, first degree assault, aggravated robbery, theft and three violent crime counts.
[2] Any reference to section 16-11-103 in this opinion concerns the 1993 version of the statute.
[3] Dunlap posits that we determined in People v. Rodriguez, 914 P.2d 230 (Colo.1996) that a trial court could consider a Crim. P. 35(b) motion as to a jury-imposed death sentence. We do not here conclude otherwise, but merely clarify that the standard applicable to a Crim. P. 35(b) motion as to such a sentence must be the same standard set out in the statute. We agree with the trial court in this case that a Crim. P. 35(b) motion would have to demonstrate that the jury-imposed sentence was clearly erroneous as contrary to the weight of the evidence.
[4] In Rodriguez, the trial court denied defendant's 35(b) motion finding that the information contained in the motion relating to his background was available to the jury at the sentencing trial and any other information provided by the defendant did not warrant a reduction in sentence. 914 P.2d at 288. The trial court seems to have made the same conclusion here regarding Dunlap's death sentence, and we find that the trial court did not abuse its discretion in its determination.