The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 3, 2020

## 2020COA167

## No. 19CA1056, *People v. Barnett* — Crimes — Attempt to Influence a Public Servant

A division from the court of appeals considers a matter of first impression: whether a defendant who presents false documentation to a private organization providing court-ordered pretrial supervision services can be found guilty of attempting to influence a public servant. The division determines that based on the language in section 18-8-306, C.R.S. 2020, an employee of such an organization is in this situation a "public servant" performing a government function.

COLORADO COURT OF APPEALS                          **2020COA167**

Court of Appeals No. 19CA1056
El Paso County District Court No. 17CR2682
Honorable Robert L. Lowrey, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew Manuel Barnett,

Defendant-Appellant.

JUDGMENT AND ORDER AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Terry and Richman, JJ., concur

Announced December 3, 2020

Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    This case presents an issue of first impression: Can a defendant who presents false documentation to an employee of a nonprofit organization that handles court-ordered pretrial supervision services be guilty of attempting to influence a public servant?  We determine that, based on the language in section 18-8-306, C.R.S. 2020, an employee of ComCor, Inc. (ComCor), is in this situation a "public servant."  We arrive at this conclusion because the ComCor employee is a person who performs a government function.

¶ 2    As a result, because defendant Matthew Manuel Barnett (Barnett) presented what purported to be an official court document to a ComCor employee to obtain removal of his GPS monitor, the evidence was sufficient to support his conviction for attempt to influence a public servant.  Thus, we affirm his conviction.

¶ 3    We also reject Barnett's contention that the district court erroneously denied his emergency motion for sentence reduction under Crim. P. 35(b).

I.    Background

¶ 4    Barnett was charged with attempt to influence a public servant under section 18-8-306 and forgery under section 18-5-

102(1)(e), C.R.S. 2020. At trial, after the prosecution rested, Barnett moved for judgment of acquittal of both charges. With respect to the attempt to influence a public servant charge, Barnett argued that the prosecution had failed to introduce evidence that ComCor and its employees were public servants acting in a governmental capacity. The district court denied the motion, concluding that ComCor "does satisfy the definition of having their employees considered public servants for purposes of a matter such as this."

¶ 5      The jury convicted Barnett of attempt to influence a public servant but deadlocked on the forgery charge, which the prosecution dismissed at sentencing. The district court sentenced Barnett to eight years in the custody of the Department of Corrections.

¶ 6      During the pendency of this appeal, Barnett filed an emergency motion with the district court under Crim. P. 35(b) requesting a reduction of his sentence to probation due to risks associated with COVID-19. Upon issuance of a limited remand by this court, the district court substantively addressed and denied Barnett's motion.

## II.    "Public Servant"

¶ 7    Barnett contends that, because ComCor is not a governmental body and its employees are not public servants, and because section 18-8-306 does not apply to private institutions, his conviction should be reversed.  We disagree.

### A.    Standard of Review

¶ 8    We review the record de novo "to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the conviction[]."  *Montes-Rodriguez v. People*, 241 P.3d 924, 927 (Colo. 2010) (quoting *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005)).  Under the substantial evidence test, we view the evidence in the light most favorable to the prosecution to determine whether it is both "substantial and sufficient" to support a defendant's guilt beyond a reasonable doubt.  *Dempsey*, 117 P.3d at 807.

¶ 9    Whether the prosecution presented sufficient evidence that Barnett committed this offense poses a question that is more legal than factual: Do employees of organizations like ComCor constitute "public servants" under section 18-8-306?  Because Barnett does not largely dispute the evidence, we do not need to weigh the

evidence so much as interpret the statute and apply it to the facts established at trial.

¶ 10    We review the issues of statutory interpretation and a statute's application de novo. *Montes-Rodriguez*, 241 P.3d at 927; *see also People v. Rowell*, 2019 CO 104, ¶ 14. We must first consider the plain language of the statute, giving words their usual and ordinary meanings. *Roup v. Com. Rsch., LLC*, 2015 CO 38, ¶ 8. Only if the statute is ambiguous do we invoke alternative canons of construction to resolve the uncertainty. *People v. Daniels*, 240 P.3d 409, 411 (Colo. App. 2009). We must read and consider the statute as a whole to give consistent, sensible, and harmonious effect to all parts. *People v. Buerge*, 240 P.3d 363, 367 (Colo. App. 2009). We avoid interpretations that would render words superfluous or lead to illogical or absurd results. *People v. Null*, 233 P.3d 670, 679 (Colo. 2010). Because it is the province of the General Assembly to define criminal conduct, we must determine the meaning of the statute by giving effect to the legislature's intent. *People v. Wartena*, 2012 COA 12, ¶ 14.

B. Crime of Attempt to Influence a Public Servant

¶ 11    The offense of attempt to influence a public servant is described in section 18-8-306, in pertinent part, as follows:

> Any person who attempts to influence any *public servant* by means of *deceit* . . . with the intent thereby to *alter or affect* the public servant's decision, vote, opinion, or *action* concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

(Emphases added.)  Section 18-8-306 adopts the meaning of "public servant" as defined in section 18-1-901(3)(o), C.R.S. 2020.  *See* § 18-8-301(4), C.R.S. 2020 (referring to the definition of "public servant" as used in section 18-8-101(3), C.R.S. 2020, which in turn, leads to section 18-1-901(3)(o)).

¶ 12    That definition states: "'Public servant' means any officer or employee of government, whether elected or appointed, and *any person participating* as an advisor, consultant, process server, or otherwise in performing a *governmental function*," but the term does not include witnesses.  § 18-1-901(3)(o) (emphases added).

¶ 13    Barnett's argument that a ComCor employee falls outside the definition of "public servant" focuses on the term "government" in

5

the definition of "public servant," which in turn is defined to include "the United States, any state, county, municipality, or other political unit, any branch, department, agency, or subdivision of any of the foregoing." § 18-1-901(3)(i). As ComCor employees are not employed by "the United States, any state, county, municipality, or other political unit," Barnett reasons, they cannot be considered an "officer or employee of government" under section 18-1-901(3)(o) and therefore do not qualify as "public servants" for the purposes of section 18-8-306.

¶ 14 What Barnett overlooks, however, is that the definition of government also includes "any corporation or other entity established by law to carry out any *governmental function.*" § 18-1-901(3)(i) (emphasis added). He also ignores the second part of the definition of "public servant," which includes "any person participating as an advisor, consultant, process server, or otherwise in performing a *governmental function.*" § 18-1-901(3)(o) (emphasis added). The Attorney General focuses on the latter wording of section 18-1-901(3)(o) to argue that the term "public servant" is "expansive" and goes beyond government employees.

¶ 15　　The district court likewise relied on the latter portion of this definition in its reasoning to conclude that "public servant includes a person who's acting as an advisor, consultant, and so forth in a government — performing a governmental function." As a result, the district court determined that ComCor and its employees were public servants by virtue of performing governmental functions, such as "advis[ing] and consult[ing] with the court systems" and "doing various testing, monitoring, breath testing, alcohol testing, drug testing, and so forth at the direction of the Courts."

¶ 16　　It is true, as Barnett suggests, that no Colorado cases deal with a situation in which a person working for a private entity like ComCor has been construed to be a "public servant" under section 18-8-306. The existing cases have, instead, primarily analyzed positions traditionally viewed as government posts. *See, e.g., People v. Knox*, 2019 COA 152, ¶ 23 (applying section 18-8-306 to the influence of a peace officer); *People v. Sena*, 2016 COA 161, ¶¶ 12-13 (same); *People v. Montante*, 2015 COA 40 ¶¶ 5, 45 (applying section 18-8-306 to the influence of a public official within a regulatory entity that issues medical marijuana user licenses); *People v. Tucker*, 232 P.3d 194, 201 (Colo. App. 2009) (applying

section 18-8-306 to the influence of an attorney and judge in another state by using official letterhead of a Colorado District Attorney); *People v. Stanley*, 170 P.3d 782, 791 (Colo. App. 2007) (applying section 18-8-306 to the influence by threat of two judges).

¶ 17   But the lack of cases does not indicate a limitation on the statutory definition.  Indeed, regardless of whether we focus on the positions of Barnett or the Attorney General, both turn on how a "government function" is defined in connection with who may qualify to be a public servant.  The term "government function" is defined to include "any activity which a public servant is legally authorized to undertake on *behalf of government*."  § 18-1-901(3)(j) (emphasis added).  Thus, the real question is whether an entity's employees engaged in the court-ordered supervision of individuals with GPS monitoring perform a "government function."

¶ 18   Courts are responsible for setting the conditions of a defendant's pretrial bond.  § 16-4-103(1), C.R.S. 2020 (setting forth the various criteria and factors a court must consider to "determine the type of bond and conditions of release").  Conditions may include, as relevant here, pretrial release services, with the potential for "[e]lectronic or global position monitoring of the person."  § 16-4-

105(8)(g), C.R.S. 2020; *see also* § 16-4-106, C.R.S. 2020 (authorizing persons eligible for bond to be evaluated for pretrial services).

¶ 19    To assist the courts in the supervision of offenders in the community, Colorado law authorizes units of government "by resolution or ordinance" to establish community corrections boards that have authority to enter into contracts and establish programs with state and local governments to carry out sentencing and rehabilitation functions normally reserved to the state. *See* § 17-27-103, C.R.S. 2020. Such partnerships are not limited strictly to governmental bodies. Nongovernmental entities, defined in section 17-27-102(5), C.R.S. 2020, to include any "private individual, partnership, corporation, or association," are authorized to establish community corrections programs that may also contract with a community corrections board or the state of Colorado to provide services to offenders as required by the department of corrections, or, parole board, or as sentenced to such programs by the courts. § 17-27-104(2), C.R.S. 2020. The statutory goal of the private-public partnership between community corrections boards and programs and the government is, among other things, to

"[f]urther all purposes of sentencing and improve public safety."
§ 17-27-101.5(1)(a), C.R.S. 2020.

¶ 20     To strictly focus on government employees or entities who, as Barnett claims, receive salaries from taxpayer funds would exclude nongovernment employees who provide a "government function," contrary to the plain language of the statutory definition of "public servant" and the plain language of the statutory definition of "government." *See Colo. Med. Bd. v. Off. of Admin. Cts.*, 2014 CO 51, ¶ 9 (noting that a court need not look further when giving effect to the plain and ordinary meaning of unambiguous statutory provisions). While Barnett would contend that a broad interpretation of "public servant" to include a private entity would ostensibly mean that *any* entity (and its employees) could be construed to be a public servant, this case hardly presents the outer limits of a government function. To the extent sufficient evidence was presented at trial to support that ComCor was an entity that assisted the courts with supervision of offenders, the broad language of "government function" — which includes a person who is legally authorized to act on "behalf of government" —

means its employee could qualify to be a "public servant" for purposes of section 18-8-306. § 18-1-901(3)(j), (3)(o).

### C.    Evidence Supporting the Conviction

¶ 21    At trial, Andrey Williams (Williams) testified that he was an "EMS supervisor at ComCor" in December 2016. He was responsible for "monitoring anyone that was on ankle monitoring for various reasons." Williams detailed the procedures for how a person is "terminated" from GPS monitoring, which required a person bringing in a court order. Without such an order, Williams testified, ComCor could not remove the device, the device would be difficult to remove, and, if removed without authorization, an alarm would alert ComCor, and an employee would then notify the court.

¶ 22    Williams identified Barnett at trial, indicating he remembered Barnett because the usual employee assigned to Barnett's case was not in on December 23, 2016. Although Williams could not remember whether Barnett handed him the court paperwork, or whether Barnett was first handed the paperwork to a secretary who then gave it to Williams, Barnett submitted documentation to obtain removal of the monitoring device. Williams removed the

11

device from Barnett and completed paperwork logging the return of the equipment.

¶ 23 Finally, Williams testified that a few months later, someone from the district attorney's office contacted him about Barnett. The district attorney requested information about Barnett's GPS monitoring, and Williams faxed the court order that was presented, as well as the documentation that included Barnett's signature acknowledging the return of the equipment.

¶ 24 Based on the evidence admitted at Barnett's trial, there was sufficient evidence to support that ComCor had the responsibility to supervise individuals required to wear GPS monitoring devices. As the district court properly concluded in denying Barnett's motion for judgment of acquittal, ComCor provides such supervision services at the "direction of the Courts" and assists and consults with the courts in pretrial services. Therefore, an employee of ComCor is a person performing a government function in this situation, as he or she is "legally authorized" to conduct such activities "on behalf of government." § 18-1-901(3)(j), (3)(o).

¶ 25 Testimony and exhibits from trial also indicated that the district court judge in Barnett's unrelated criminal case had

imposed bond conditions subjecting Barnett to GPS monitoring. The district court judge in the unrelated criminal case testified that he had not issued the "order" that purportedly authorized termination of GPS monitoring that Barnett presented to ComCor in December 2016. The district court judge's staff also testified, corroborating that they had not prepared or issued an order terminating GPS monitoring for Barnett, as well as indicating that the "order" presented to ComCor was not in the usual format for orders issued by the court.

¶ 26 Because ComCor would have notified the court if the GPS monitor was removed without authorization, the record supports that Barnett acted with "deceit" and that his intent was to "alter or affect" the "action" of Williams by presenting false documentation to have the GPS monitor removed. *See* § 18-8-306. This is further supported by Barnett's signature that acknowledged that the GPS monitor was returned in December 2016, contrary to the district court judge's directive.

¶ 27 Having determined that section 18-8-306 applies in this situation to employees of private community corrections organizations such as ComCor, we conclude that the record

13

contains evidence both substantial and sufficient to support Barnett's conviction of attempt to influence a public servant beyond a reasonable doubt. *See Montes-Rodriguez*, 241 P.3d at 927. Accordingly, we uphold his conviction.

### III. Crim. P. 35(b) Motion for Reduced Sentence

¶ 28 Barnett also contends on appeal that the district court erred in denying his Crim. P. 35(b) motion to reduce his eight-year sentence to a probationary sentence. We disagree.

### A. Standard of Review and Applicable Law

¶ 29 Crim. P. 35(b) enables district courts to review a sentence to ensure that it is proper before making it final. *Ghrist v. People*, 897 P.2d 809, 812 (Colo. 1995). "A court's review of a Crim. P. 35(b) motion focuses on the fairness of the sentence in light of the purposes of the sentencing laws." *People v. Dunlap*, 36 P.3d 778, 780 (Colo. 2001).

¶ 30 When presented with a Crim. P. 35(b) motion, the court may consider all relevant and material factors, including new evidence and evidence the trial court knew when it imposed the original sentence. *Id.* at 782. Crim. P. 35(b) does not require the postconviction court to make findings of fact, but the court should

14

"provide a statement of the basic reasons in support of its ruling." *Id.* Crim. P. 35(b) also does not require the court to hold a hearing on the motion: "The court may, after considering the motion and supporting documents, if any, deny the motion without a hearing."

¶ 31 An order denying a Crim. P. 35(b) motion is reviewed to determine if the postconviction court failed to exercise its judicial discretion by refusing to consider any information in mitigation. *People v. Busch*, 835 P.2d 582, 583 (Colo. App. 1992). The propriety of the sentence is not subject to review. *Id.*

¶ 32 During the pendency of Barnett's appeal, the Colorado Supreme Court amended Crim. P. 35(b) on April 16, 2020. That amendment provides district courts with jurisdiction to consider a defendant's request for sentence reduction during a direct appeal upon a limited remand from an appellate court. Crim. P. 35(b)(4).

### B. Analysis

¶ 33 We discern no abuse of discretion in the district court's denial of Barnett's Crim. P. 35(b) motion. In its written denial, the district court noted that it had reviewed the motion, concluding that "the court is well familiar with this case and finds that the original sentence imposed is appropriate to the circumstances of this case."

15

In doing so, the court provided its "basic reasons in support of its ruling." *See Dunlap*, 36 P.3d at 778.

¶ 34 Barnett's argument centers on the fact that the district court made no overt findings or remarks vis-à-vis the health risks presented by the COVID-19 pandemic and, thus, in his view, did not "consider" such new information raised in the motion. We are not persuaded.[1]

¶ 35 The district court was not required to make any specific findings of fact about COVID-19. *See id.* Having reviewed Barnett's motion, the court factored into its consideration Barnett's arguments surrounding the pandemic and its knowledge of prior proceedings. Indeed, the court *was* familiar with Barnett's case, as the same judge presided over Barnett's sentencing the previous year. At Barnett's sentencing hearing, the court remarked that he viewed Barnett's actions as "ma[king] a mockery of [veterans' treatment] court" and "ma[king] a mockery of the conditions placed upon him by Community Corrections." Further, the court noted

---

[1] We note that Barnett did not allege any personal medical risk factors that make him more vulnerable or susceptible to the virus than other similarly situated individuals.

that, as Barnett's GPS monitoring had been a bond condition for menacing charges, Barnett "placed the victim in harm again by cutting off that monitor."

¶ 36 In short, the district court had reasons for its original sentence that were not overridden by the COVID-19 pandemic. We will neither fault the court for its short order nor construe such brevity as a failure to exercise discretion in its denial of Barnett's Crim. P. 35(b) motion. *See Busch*, 835 P.2d at 583.

### IV.   Conclusion

¶ 37 The judgment of conviction and order are affirmed.

JUDGE TERRY and JUDGE RICHMAN concur.