23CA0186 Peo v Florez-Molina 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0186 Larimer County District Court No. 20CR2100 Honorable Susan Blanco, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Carlos Geovanny Florez-Molina, Defendant-Appellant. ORDER AFFIRMED Division VI Opinion by JUDGE LIPINSKY Schutz and Bernard*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Philip J. Weiser, Attorney General, Alejandro Sorg, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Carlos Geovanny Florez-Molina, Pro Se *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Carlos Geovanny Florez-Molina appeals the district court’s order denying his Crim. P. 35(b) motion. We affirm. I. Background ¶ 2 Multiple law enforcement agencies investigated thirty separate residential burglaries in more than eighteen different jurisdictions across the United States, including in Larimer County, that occurred in 2019. The agencies determined that the same individuals were responsible for the burglaries and that the group was targeting the homes of Asian-American business owners. After obtaining information linking Florez-Molina to the crimes, law enforcement officers apprehended him in Florida, where he had been arrested under an alias on unrelated charges. ¶ 3 Prosecutors in Larimer County charged Florez-Molina with one count under section 18-17-104(3), C.R.S. 2023, of the Colorado Organized Crime Control Act (COCCA) (conducting or participating in an enterprise through a pattern of racketeering activity); one count under section 18-17-104(4) of COCCA (conspiracy to violate COCCA); twenty-four counts of second degree burglary; nineteen counts of theft; and one count of criminal mischief. The second 
2 degree burglary, theft, and criminal mischief counts were charged as the predicate acts of the COCCA counts. ¶ 4 Florez-Molina entered into a plea agreement. In exchange for Florez-Molina’s agreement to plead guilty to a single COCCA count under section 18-17-104(3), a class 2 felony, and one of the theft counts, a class 3 felony, the prosecution agreed to dismiss the remaining forty-four counts. ¶ 5 The plea agreement that Florez-Molina signed called for “open sentencing,” meaning that the “Court shall have full sentencing discretion,” including the ability to sentence Florez-Molina to “the Department of Corrections [DOC] (State Prison), Community Corrections or Probation.” The agreement further specified that, if the court imposed a sentence to the DOC, “the plea agreement does permit for consecutive sentences to be imposed” and “an additional MANDATORY period of parole as required by state law for a Class 2 Felony.” In addition, the agreement stated that Florez-Molina’s COCCA conviction carried a presumptive sentencing range of eight to twenty-four years, and that the theft conviction carried a presumptive sentencing range of four to twelve years. 
3 ¶ 6 The court accepted Florez-Molina’s guilty pleas and ordered a presentence investigation report (PSIR). Following submission of the PSIR, the court sentenced Florez-Molina to ten years for the COCCA conviction and eight years for the theft conviction, with the sentences to run consecutively. ¶ 7 Florez-Molina was represented by counsel throughout the proceedings. ¶ 8 Three months later, Florez-Molina’s attorney filed a timely Crim. P. 35(b) motion. In the motion, the attorney argued that Florez-Molina was entitled to a sentence reduction because • he received longer sentences than those imposed on his codefendants; • unlike his codefendants, he provided information about “ongoing burglaries, including identifying individuals and cells that are currently operating within the United States”; • following his sentencing, he continued to provide information to the Federal Bureau of Investigation regarding “active burglary cells”; 
4 • in contrast, his codefendants “only reluctantly provided information and only when they were specifically asked to by law enforcement”; • unlike his codefendants, he “will face mandatory exile from the United States upon completion of his DOC sentence”; • he has three children, is well-educated, and has “no other criminal history”; and • he completed a rehabilitative course while incarcerated. ¶ 9 The court denied Florez-Molina’s motion, noting as follows: • while Florez-Molina “did proffer information to aid in the investigation,” his codefendants “volunteered information at an earlier time than Mr. Florez-Molina did”; • although the court “positively acknowledge[d] the courses Mr. Florez-Molina has completed” while incarcerated, he did not present “new evidence or additional material factors” warranting a reduction of his sentence; • the prosecution’s original case against Florez-Molina was “extremely serious in nature”; 
5 • he “played a part in a group of individuals systematically victimizing a total of 83 victims and what amounted to burglarizing 26 homes”; • while the other codefendants were not similarly situated to Florez-Molina, his sentence was “appropriate even though it is not the same as the others”; and • the court had previously considered the information that Florez-Molina proffered and it “weighed into the Court’s initial sentencing decision.” ¶ 10 The court concluded that, although Florez-Molina “is taking his time while incarcerated seriously, the Court is balancing the acts which brought him before the jurisdiction of this Court and finds a reconsideration to be inappropriate.” ¶ 11 Florez-Molina, now self-represented, appeals the denial of his Crim. P. 35(b) motion. II. Analysis ¶ 12 On appeal, Florez-Molina argues that the judgment entered against him violated his right to due process under the Fifth and Fourteenth Amendments because the court erred by not merging his COCCA and theft convictions and, relatedly, his sentence 
6 violated section 18-1.3-408, C.R.S. 2023; for the same reason, his sentence violated his constitutional right against double jeopardy; his sentence amounted to cruel and unusual punishment, in violation of his Eighth Amendment rights, because it is disproportionate to the crimes to which he pleaded guilty; and the court violated his rights to “fundamental fairness of due process” guaranteed under the Fifth and Fourteenth Amendments because the court sentenced him based on a “fraudulent narrative,” did not consider his “character and rehabilitative potential,” and did not find that he was “a risk to public safety.” (Because Florez-Molina did not provide us with the transcript of the sentencing hearing, we presume that the court’s findings and conclusions are correct and that the evidence supports his sentence. People v. Tolbert, 216 P.3d 1, 3 (Colo. App. 2007).) A. Applicable Law and Standard of Review ¶ 13 Crim. P. 35(b) permits a court to reconsider in a timely fashion a previously imposed sentence “in light of all relevant and material factors which may or may not have been initially considered by the court and, in the exercise of sound judicial discretion, to resentence the defendant to a lesser term within the statutory limits if 
7 warranted in the interests of justice.” People v. Fuqua, 764 P.2d 56, 60 (Colo. 1988). “A court’s review of a Crim. P. 35(b) motion focuses on the fairness of the sentence in light of the purposes of the sentencing laws.” People v. Dunlap, 36 P.3d 778, 780 (Colo. 2001). ¶ 14 The decision whether to grant a motion for sentence reconsideration under Crim. P. 35(b) is committed to the sound discretion of the district court. See id. at 782 (“Crim. P. 35(b) affords trial judges a large amount of discretion when considering [a] defendant’s motion.”); Ghrist v. People, 897 P.2d 809, 814 (Colo. 1995). When adjudicating a Crim. P. 35(b) motion, the district court must consider all relevant and material factors, including “new evidence as well as facts known at the time” the court pronounced the original sentence. People v. Busch, 835 P.2d 582, 583 (Colo. App. 1992). ¶ 15 “We review a ruling on a Crim. P. 35(b) motion for an abuse of discretion.” People v. Chavez, 2020 COA 80M, ¶ 8, 486 P.3d 377, 378. A district court abused its discretion in denying a Crim. P. 35(b) motion only if it refused to consider any information in mitigation and failed to make findings in support of its decision. 
8 See Mikkleson v. People, 199 Colo. 319, 321, 618 P.2d 1101, 1102 (1980); People v. Olivas, 911 P.2d 675, 677 (Colo. App. 1995). ¶ 16 “When a defendant does not raise an issue in a postconviction motion . . . , and the postconviction court therefore does not have an opportunity to rule on the issue, as a general rule, the issue is not properly preserved for appeal and we will not consider it.” People v. Huggins, 2019 COA 116, ¶ 17, 463 P.3d 294, 297. But at least one division of this court has applied the plain error standard of review when considering a defendant’s unpreserved arguments for a sentence reduction under Crim. P. 35(b). See People v. Castellano, 209 P.3d 1208, 1209 (Colo. App. 2009). “The criteria of error that is plain and that prejudiced substantial rights can be used to evaluate an alleged sentencing error.” People v. Tillery, 231 P.3d 36, 48 (Colo. App. 2009) (citation omitted), aff’d sub nom. People v. Simon, 266 P.3d 1099 (Colo. 2011). B. The Court Did Not Violate Florez-Molina’s Right Against Double Jeopardy Because His Convictions for COCCA and Theft Did Not Merge ¶ 17 Florez-Molina’s first two arguments are essentially the same: that the court erred by imposing consecutive sentences for his COCCA and theft convictions because they were premised on the 
9 same facts and, therefore, the court should have merged the convictions. ¶ 18 We disagree with Florez-Molina’s contention that he preserved his merger argument. Florez-Molina asserts that he was not required to preserve the argument because the district court “exceeded its jurisdiction” by denying his motion “in the absence of Due Process of law.” But he fails to point to, and we are not aware of, any authority holding that a district court loses subject matter jurisdiction over a Crim. P. 35(b) motion if its ruling on that motion allegedly violates the defendant’s right to due process. “[T]here is no question that a trial court is authorized to hear postconviction motions . . . .” People v. Stanley, 169 P.3d 258, 260 (Colo. App. 2007). ¶ 19 In any event, the court did not err when it imposed consecutive sentences for Florez-Molina’s COCCA and theft convictions. The General Assembly does not violate defendants’ double jeopardy rights by “specifying multiple punishments based upon the same criminal conduct.” People v. Hoover, 165 P.3d 784, 798 (Colo. App. 2006). “As long as the general assembly makes clear its intent to punish the same offense with more than one 
10 conviction and sentence, it is not constitutionally prohibited from doing so.” Id. (quoting People v. Abiodun, 111 P.3d 462, 465 (Colo. 2005)). ¶ 20 “[T]he General Assembly clearly authorized separate punishments for COCCA and the underlying predicate offense[] of theft . . . .” Id. at 801. For this reason, Florez-Molina’s sentence also did not violate section 18-1-408, C.R.S. 2023, which prohibits sentences for more than one offense under specified circumstances, including when “[o]ne offense is included in the other.” § 18-1-408(1)(a). ¶ 21 Accordingly, we hold that the court did not violate Florez-Molina’s due process rights or his constitutional protection against double jeopardy by imposing the separate, consecutive sentences. C. The Court Did Not Err by Imposing Sentences Within the Statutory Ranges for COCCA and Theft ¶ 22 Florez-Molina states that, because his counsel “raised a constitutional challenge to his judgment,” his constitutional challenge to the length of his sentences is preserved. But the motion makes no reference to the constitutional prohibition against 
11 cruel and unusual punishment. Thus, Florez-Molina did not preserve his Eighth Amendment argument and we review for plain error. We conclude there was no error. ¶ 23 The sentences on the COCCA and theft counts to which Florez-Molina pleaded guilty were consistent with the presumptive sentencing ranges specified in the agreement. As noted above, the agreement stated that Florez-Molina’s COCCA conviction carries a presumptive range of eight to twenty-four years in the custody of the DOC, and that the theft conviction carries a presumptive range of four to twelve years. ¶ 24 Florez-Molina’s admissions and other statements in the PSIR established his key role in the burglary ring, contrary to his argument that the court’s conclusion that he was “the principal actor in this racketeering activity” is “belie[d] by the record.” In the PSIR, Florez-Molina admitted that he “was involved in many home invasion crimes in Colorado” and other jurisdictions, including Wyoming, California, and Washington, D.C. He conceded that his offenses impacted “a series of persons from the immigrant community who suffered the consequences” of his actions. 
12 ¶ 25 The PSIR stated that one of Florez-Molina’s codefendants explained that the group targeted “Chinese business owners” because the group believed they “hid cash at their houses and don’t trust banks.” The known losses from the burglaries was between $1.3 million and $1.5 million. ¶ 26 According to the codefendant, each member of the group “assumed specific roles and responsibilities during the burglaries” and that Florez-Molina was one of the two individuals “who forced entry into, and subsequently burglarized, the victims’ houses.” Further, the codefendant described Florez-Molina as a “very dangerous man with connections in Colombia,” who would kill the codefendant and his family “if he found out” that the codefendant “was implicating [him] in the burglaries.” ¶ 27 The record establishes that the court’s denial of the motion rested on appropriate considerations. In sentencing a defendant, a trial court “may properly consider . . . the circumstances giving rise to other charges dismissed at the time of the plea as aggravating factors.” People v. Zuniga, 80 P.3d 965, 972 (Colo. App. 2003). In addition, the court possessed the discretion to rely on the uncontroverted facts in the PSIR, even though Florez-Molina now 
13 challenges them. See People v. Brosh, 251 P.3d 456, 460 (Colo. App. 2010). Those uncontroverted facts painted a portrait of Florez-
Molina as a dangerous, key member of a group that targeted dozens of members of a racial minority during a multi-state crime wave. ¶ 28 Contrary to Florez-Molina’s contention on appeal that he merely “participated in a single act of theft,” and that such theft was “isolated,” his plea to a single COCCA count and a single theft count does not mean that the court was required to ignore the multitude of other crimes with which Florez-Molina was charged. ¶ 29 Significantly, the court sentenced Florez-Molina within the statutory ranges for the COCCA and theft counts to which he pleaded guilty. Under the COCCA statute, he committed a class 2 felony, § 18-17-105(1), C.R.S. 2023, punishable by a term of incarceration of between eight and twenty-four years, § 18-1.3-401(1)(a)(V)(A.1), C.R.S. 2023 (setting forth the sentencing ranges for class 2 felonies committed between July 1, 2018, and June 30, 2020). The theft count to which Florez-Molina pleaded guilty was a class 3 felony, § 18-4-401(1), (2)(i), C.R.S. 2023, punishable by a sentence of between four and twelve years of imprisonment, § 18-1.3-401(1)(a)(V)(A.1). 
14 ¶ 30 Insofar as Florez-Molina claims that his sentence was disproportionate, such contention is preserved to the extent it mirrors the argument in the motion that his sentence was longer than those of the other codefendants, to whom he claims he is similarly situated. ¶ 31 But Florez-Molina’s disproportionality argument on appeal is premised on the incorrect assumption that theft of more than $1 million is not a grave or serious offense for purposes of a proportionality review. See Melton v. People, 2019 CO 89, ¶ 24, 451 P.3d 415, 420 (“Knowingly obtaining, retaining, or exercising control, through threats, over something worth $1,000,000 owned or possessed by another, with the intent to deprive the other person permanently of the use or benefit of it, belongs in the same category as per se grave or serious crimes.”). “Once a crime has been deemed per se grave or serious, courts skip the first subpart of step one of an abbreviated proportionality review (gravity or seriousness) and proceed directly to the second subpart of that step (harshness of the penalty).” Wells-Yates v. People, 2019 CO 90M, ¶ 62, 454 P.3d 191, 208-09. 
15 ¶ 32 Florez-Molina’s sentence was not impermissibly harsh because, as explained above, the facts he admitted and on which the district court relied reflect the gravity and seriousness of his crimes. See id. at ¶ 1, 454 P.3d at 195; see also People v. Hernandez-Clavel, 186 P.3d 96, 98 (Colo. App. 2008) (“Colorado courts are given wide discretion in determining an appropriate sentence. This includes the discretion to consider a wide variety of factors, including the circumstances of the offense, individual characteristics of the offender, and prior conduct.”). ¶ 33 For these reasons, we hold that Florez-Molina’s sentence did not amount to cruel and unusual punishment in violation of the Eighth Amendment. D. The Court Did Not Violate Florez-Molina’s Due Process Rights Because the Court Properly Considered the Relevant Facts ¶ 34 Lastly, Florez-Molina contends he was denied due process because the court relied on “a distorted factual basis,” it disregarded his “character and rehabilitative potential,” and the consecutive sentences were not necessary to protect the public. Because Florez-Molina did not raise these assertions in the motion, they are not preserved and we review them for plain error. In any 
16 event, the court’s denial of the motion rested on appropriate considerations. ¶ 35 As we explain above, in adjudicating the motion, the court had the discretion to rely on the uncontroverted facts in the PSIR, even though Florez-Molina now challenges them. See Part II.C above. Those facts demonstrate that the court did not rest its denial of the motion on a “fraudulent narrative” that characterized Florez-Molina as the kingpin of the burglary ring. Rather, the facts described in the PSIR established that he was a key member of a criminal enterprise that broke into and entered dozens of homes and stole millions of dollars of valuables. ¶ 36 Further, in denying the motion, the court acknowledged that it had considered the seriousness with which Florez-Molina “is taking his time while incarcerated.” Lastly, Florez-Molina provides no support for his contention that the court erred by not assessing whether he was a “threat to the public safety.” ¶ 37 In sum, the court did not disregard any relevant facts in denying the motion. III. Disposition ¶ 38 The order is affirmed. 
17 JUDGE SCHUTZ and JUDGE BERNARD concur.