24CA1982 Peo v Garringer 11-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1982
City and County of Denver District Court No. 23CR5092
Honorable Alex C. Myers, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joshua J. Garringer,

Defendant-Appellant.

ORDER AFFIRMED

Division A
Opinion by JUDGE BERGER*
Román, C.J., and Graham*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado for Plaintiff-Appellee

Muhaisen & Muhaisen, LLC, Wadi Muhaisen, Scott C. Hammersley, Denver, Colorado for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Joshua J. Garringer, appeals the district court's order denying his sentence reduction motion. We affirm.

I.     The Charges, Plea, and Sentencing

¶ 2     The People charged Garringer with ten counts of second degree burglary, seven counts of first degree criminal trespass, and three counts of theft. The charges stemmed from allegations that Garringer broke into ten different residential garages over the course of roughly a month and stole various items.

¶ 3     Pursuant to a plea agreement, Garringer pleaded guilty to two counts of second degree burglary in exchange for the dismissal of the remaining counts. The parties agreed to sentencing in the aggravated range of eight to twenty-four years on each count because Garringer was on parole at the time he committed the charged offenses. They also stipulated to an overall sentencing cap of thirty years.

¶ 4     At sentencing, the prosecutor asked the court to impose the thirty years permitted by the plea agreement, referencing Garringer's "100% recidivism rate" and noting that Garringer was on parole at the time of the instant offenses. The prosecutor further noted that, although Garringer had "experienced a great deal of

trauma in his life," he had an extensive criminal history including numerous prior felonies and at least one violent crime. The prosecutor acknowledged that, due to the "one continuous sentence rule," Garringer had only served six months of a previous six-year sentence before being paroled.

¶ 5 Defense counsel asked for concurrent sentences of eight years on each count. She argued that Garringer's criminal history was not violent and asserted that, although he broke into garages, he did "not enter these people's homes" and was stealing to fuel his drug addiction, which he was working to overcome. Garringer asked the court not to "view [him] as a lost cause" and expressed remorse for his actions, for which he accepted responsibility. He further detailed his efforts to maintain sobriety and "be a productive person . . . in society," including completing jail-based programs aimed at addressing substance abuse and building healthy relationships. And he asked the court not to take away "the next 20 years of [his] life" and allow him to use his time in prison to become a better person and be a part of his young son's life. Several friends and family members also spoke on Garringer's behalf, including his sister.

¶ 6     The court indicated that it had reviewed the presentence investigation report along with mitigation information including letters of support from Garringer's friends and family and a report from a social worker who detailed Garringer's social history.  The court acknowledged that there were a number of people who described Garringer as a "good provider, a family man, [and a] good father."  It was apparent, the court said, that Garringer cared about his child.  But, the court noted, it was not "here to judge [Garringer] as good person or a bad person"; rather, the court's role was to "find a sentence that fits [the] circumstances" and complies with the various "considerations I have to think about when I sentence someone."

¶ 7     Recognizing punishment as one of those considerations, the court said that it didn't think "throwing the book at" Garringer was appropriate.  But the court also acknowledged Garringer's lengthy criminal history and the violative and calculated nature of the instant crimes — that they were not simply crimes of opportunity, but rather targeted crimes committed in concert with others and involving the destruction of property to avoid detection.  With all of this in mind, the court imposed eighteen-year sentences on each

count, concurrent with each other but consecutive to Garringer's parole matters. The court noted that it elected to impose the sentences consecutive to the parole matters in recognition of the harm caused to the victims in this case, "rather than lumping [th]em in" with Garringer's other cases.

## II.    The Crim. P. 35(b) Motion and Ruling

¶ 8    Garringer filed a timely Crim. P. 35(b) motion seeking a three-year reduction on his sentences and asking that his parole sentences run concurrently with the sentences in this case. He noted his community support, that he is intent on taking advantage of prison programming for personal growth, and that — notwithstanding his ineligibility for certain programs and classes due to his sentence length — he is making progress in available programs and is focused on his own rehabilitation. He noted that, if his sentence was reduced, he would be eligible to enroll in additional programs. In support of his motion, he attached both the sentencing hearing transcript and a letter from his sister.

¶ 9    The district court denied the motion in a written order, finding that its original sentencing decision was "appropriate for all the reasons stated at sentencing." The court found that "the mitigating

4

circumstances" and the "continued community support" presented by the motion did not warrant modification of the sentence "in light of the seriousness of the offenses, Mr. Garringer's recidivism and prior felony record, and that these offenses occurred while Mr. Garringer was on parole." The court also noted that, given that Garringer was serving multiple sentences from multiple jurisdictions, the "[Department of Corrections (DOC)] indicates that he will be parole eligible . . . just 8 years into the 18-year sentences" in this case.

### III. The District Court Did Not Abuse its Discretion

¶ 10 Garringer contends that the district court abused its discretion in denying his Crim. P. 35(b) motion. The thrust of his argument is that, instead of focusing "only on the factors and arguments" he made in his motion, the court instead unreasonably placed undue emphasis on his parole eligibility date. We perceive no abuse of discretion.

### A. Legal Principles and Standard of Review

¶ 11 Crim. P. 35(b) permits a district court to review a sentence to ensure that it is fair in light of the purposes of Colorado's sentencing laws. *People v. Dunlap*, 36 P.3d 778, 780 (Colo. 2001);

5

*see also People v. Arnold*, 907 P.2d 686, 687 (Colo. App. 1995) (Crim. P. 35(b) is intended "to give the court the opportunity to reconsider the sentence in light of further information about the defendant or the case which is presented after the initial sentencing."). In doing so, the court may consider all relevant and material factors, including new evidence and evidence it knew when it imposed the original sentence. *Dunlap*, 36 P.3d at 780. A court need not make detailed findings of fact when ruling on a Crim. P. 35(b) motion but must state the basic reasons in support of its ruling. *Dunlap*, 36 P.3d at 782.

¶ 12    Whether to reduce a sentence under Crim. P. 35(b) is within the court's sound discretion. *Dunlap*, 36 P.3d at 780. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if its ruling is based on an erroneous view of the law. *Hoang v. People*, 2014 CO 27, ¶ 12.

### B.    Analysis

¶ 13    The district court's order indicates that it reviewed both the information in Garringer's Crim. P. 35(b) motion along with the attachments, court file, and the relevant and material facts of the case. Noting Garringer's evidence in mitigation and "continued

6

community support," the court implicitly found that the requested sentence reduction was based largely on the same factors the court had considered when it originally sentenced him. Indeed, the letter attached in support of Garringer's community support argument came from his sister, who also spoke in support of Garringer at the sentencing hearing. And, notwithstanding Garringer's continued participation in programming aimed at self-improvement once sentenced to prison, he testified at sentencing that it was his goal to do so, evidenced by such participation in jail programs. *See People v. Busch*, 835 P.2d 582, 583 (Colo. App. 1992) (no abuse of discretion where the evidence in support of defendant's Crim. P. 35(b) motion was nearly identical to that presented at the sentencing hearing, and the trial court considered relevant evidence in denying defendant's motion); *People v. Barnett*, 2020 COA 167, ¶ 33 (no abuse of discretion in denial of defendant's Crim. P. 35(b) motion where district court noted that it had reviewed the motion and stated that it was "well familiar with this case and finds that the original sentence imposed is appropriate to the circumstances of this case").

¶ 14    Nor are we persuaded by Garringer's assertion that the court unreasonably placed *undue* emphasis on his parole eligibility date. As the People point out, the court's comment about parole eligibility came after it had explained the basic reasons for its denial of Garringer's sentence reduction request. In any event, the court's observation did not unduly emphasize Garringer's parole eligibility but rather was, at most, one among several factors in the court's analysis. *Dunlap*, 36 P.3d at 780.

¶ 15    Garringer also appears to assert that consideration of parole eligibility was wholly improper because (1) parole is determined by the DOC and not the court, and there is no guarantee that he will be granted parole; and (2) the court should have focused "only on the factors and arguments" raised in Garringer's Crim. P. 35(b) motion. However, contrary to Garringer's suggestion, the court did not imply that he would be granted parole; it only observed the DOC's determination of when he might first be *eligible* for parole. And caselaw directly contradicts Garringer's suggestion that the court was required to focus "only" on the factors he raised in his motion: in resolving a Crim. P. 35(b) motion, a court may consider all relevant and material factors. *Dunlap*, 36 P.3d at 780.

¶ 16 Likewise, we are not persuaded by Garringer's fleeting assertion that the district court failed to address his Crim. P. 35(b) request that the court run his sentences concurrent to his parole matters. Although the court did not expressly reference Garringer's request for concurrent sentencing in its order, this does not mean the court failed to consider it. *See Barnett*, ¶ 35 (a court is not required to make overt findings about every argument raised in a Crim. P. 35(b) motion). Instead, the court stated its basic reasons for denying Crim. P. 35(b) relief, which is all that is required. *Barnett*, ¶¶ 33, 36 (By stating that it was "well familiar with this case" and "find[ing] that the original sentence imposed [wa]s appropriate to the circumstances of this case," the court provided its "basic reasons in support of its [Crim. P. 35(b)] ruling," which were not "overridden" by the defendant's claims about the COVID-19 pandemic.)

## IV. Disposition

¶ 17 The order is affirmed.

CHIEF JUDGE ROMÁN and JUDGE GRAHAM concur.